Thomas Edward SPANGLER, Appellant,

v.

TEXAS DEPARTMENT OF PROTEC-TIVE AND REGULATORY SER-VICES, Appellee.

No. 10–97–210–CV.

Court of Appeals of Texas, Waco.

Feb. 4, 1998.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

DAVIS, Chief Justice.

Appellee, the Texas Department of Protective and Regulatory Services ("DPRS"), filed suit to terminate the parental rights of appellant, Thomas Edward Spangler, with respect to his two daughters. As grounds for termination, DPRS alleges that Spangler: (1) knowingly placed or knowingly allowed his children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed his children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; (3) failed to support the children in accordance with his ability during a period of one year; and (4) that termination of the parent-child relationship would be in the best interest of the children. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996). The jury found that Spangler engaged in the conduct alleged and that termination was in the best interest of the children. The trial court signed a decree terminating parental rights. Spangler brings this appeal asserting in one point of error that the trial court erred in rendering judgment because the jury's findings of fact were not supported by factually sufficient evidence. We will affirm the judgment.

**FACTUAL BACKGROUND**

Spangler is the father of two girls, seven year old M.R.S. and five year old R.D.S. In 1994, a grand jury indicted Spangler for sexually assaulting a child. On June 25, 1995, officers with the Bellmead Police Department arrested Spangler for driving while intoxicated while his daughters were in the vehicle. In 1996, Spangler was incarcerated for six counts of felony retaliation against DPRS employees. On March 24, 1997, this case was submitted to a jury and the trial court terminated the parent-child relationship between the children and Spangler as well as with their biological mother.

Gell R. Kingery, Waco, for appellant.

James Robert Angel, Asst. Atty. Gen., Amy Forrester, Asst. Dist. Atty., Stanley Rentz, Atty. Ad Litem, Waco, for appellee.

## POINT OF ERROR

Spangler's sole point of error alleges that the evidence is factually insufficient to support the jury's finding that he engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. Spangler also asserts that the evidence is factually insufficient to support the jury's finding that he failed to support the children during the one year period preceding the filing of the termination petition.

## TERMINATION OF PARENTAL RIGHTS

■ The natural right existing between parents and their children is of constitutional dimension. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick,* 685 S.W.2d at 20. ·

■ In proceedings to terminate the parent-child relationship brought under Section 161.001 of the Family Code, the petitioner must establish one or more acts or omissions enumerated under subsection (1) of the statute and must additionally prove, that termination of the parent-child relationship is in the best interest of the child. *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984). Both elements must be established, and proof of one element does not relieve the petitioner of the burden of proving the other. *See Holley v. Adams,* 544 S.W.2d 367, 370 (Tex.1976); *Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex. 1976).

## CLEAR AND CONVINCING EVIDENCE

■ Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth or the allegations sought to be established." *Id.* Although the clear and convincing standard of proof required at the trial level is well settled, the standard of appellate review to be applied by this court is not as well defined. *In re L.R.M.,* 763 S.W.2d. 64, 65 (Tex.App.—Fort Worth 1989, no writ).

Texas law requires this court to determine if the trial court adhered to the clear and convincing standard of proof. *Baxter v. Texas Dep't of Human Resources,* 678 S.W.2d · 265, 267 (Tex.App.—Austin 1984, no writ). The Texas Supreme Court has held that termination proceedings should be "strictly scrutinized." *Holick,* 685 S.W.2d at 20; *G.M.,* 596 S.W.2d at 846. "In reviewing the factual sufficiency of the record in a termination suit, [the court of appeals] must consider all of the evidence as required by *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951), while applying the 'clear and convincing evidence' standard of proof." *G.M. v.· Texas Dep't of Human Resources,* 717 S.W.2d 185, 187 (Tex.App.—Austin 1986, no writ).

However, it is imprecise to say that the court of appeals should apply the clear and convincing standard of proof because the standard of proof must, by definition, be applied in the trial court. *L.R.M.,* 763 S.W.2d at 66. The Dallas Court of Appeals recognized this distinction in *Neiswander v. Bailey,* 645 S.W.2d 835, 835–36 (Tex.App.— Dallas 1982, no writ) (citing *Beeler v. American Trust Co.,* 24 Cal.2d 1, 147 P.2d 583, 600 (1944)) (Traynor, J., dissenting); Bryant M. Bennett, Comment, *Evidence: Clear and Convincing Proof: Appellate Review,* 32 CAL. L.REV. 74, 78 (1944). In *Neiswander,* the court held:

[I]t is the duty of the appellate court in reviewing the evidence to determine, not whether the trier could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of a fact is highly probable.

*Neiswander,* 645 S.W.2d at 835–36. This standard of appellate review recognizes that the trier of fact judges the credibility of witnesses. *Wayland v. City of Arlington,* 711 S.W.2d 232, 233 (Tex.1986). However, using the term "highly probable" is an unnecessary complication because, in this context, "highly probable" is merely a synonym for "clear and convincing." *L.R.M.,* 763 S.W.2d at 66.

■ Therefore, the rule adopted by this court is stated as follows: When the trier of fact is required to make a finding by clear and convincing evidence, the court of appeals will only sustain a point of error alleging insufficient evidence if the trier of fact could not reasonably find the existence of the fact to be established by clear and convincing evidence. *See L.R.M.,* 763 S.W.2d at 66–67. We do not believe that the Texas Supreme Court intends to require trial courts to adhere to a higher standard of proof in termination cases while allowing the courts of appeals to use the same standard of review as in cases decided by a preponderance of the evidence. *Id.*

Therefore, just as the clear and convincing standard of proof is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings, this standard of appellate review is an intermediate standard. *Neiswander,* 645 S.W.2d at 835; *See also* Justice Bill Vance, *The Clear and Convincing Evidence Standard in Texas: A Critique,* 48 BAYLOR L.REV. 391 (1996). This intermediate standard of review is necessary to protect the fundamental constitutional rights involved by termination of parental rights. *Compare G.M.,* 596 S.W.2d at 846.

Our holding can be reconciled with earlier cases in which the Texas Supreme Court refused to apply a clear and convincing standard. *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975) (per curiam), and cases cited therein. In *Meadows,* the court stated:

> In reaching its decision the Court of Civil Appeals has sought to apply a third standard of reviewing the evidence presented at trial-the "clear and convincing" standard. In Texas there are but two standards by which evidence is reviewed: factual sufficiency and legal sufficiency. The requirement of clear convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence.

*Id.*

This court must still determine whether the evidence at trial was factually sufficient to support a finding of clear and convincing evidence. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984) (in a criminal appeal, appellate court must determine if a rational trier of fact could have found elements of crime beyond reasonable doubt).

■ Other principles of law relating to sufficiency of evidence are still applicable even when an intermediate standard of review is used. *L.R.M.,* 763 S.W.2d at 67. In preponderance cases, insufficient evidence points should be sustained when: (1) the evidence is factually insufficient to support a finding by the preponderance of the evidence; or (2) a finding is contrary to the great weight and preponderance of the evidence. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 366 (1960). Likewise in a clear and convincing case, an insufficient evidence point may be sustained when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. *L.R.M.,* 763 S.W.2d at 67.

## THE EVIDENCE

Spangler contends that the evidence was factually insufficient to support the jury's affirmative answers terminating the parent-child relationship between Spangler and his daughters. The record indicates that twelve witnesses testified about Spangler's course of conduct concerning his daughters and the condition of his home.

Mrs. Spangler, the mother of M.R.S. and R.D.S., and Spangler's ex-wife, testified that she began living with Spangler when she was twelve and married him when she was fourteen. She testified that Spangler abused her

in front of M.R.S. and R.D.S. and consumed a twelve pack of beer daily. She stated that Spangler requested that she assist him in raping a thirteen year-old girl, who was living with them. The girl eventually filed rape charges against him in Limestone County. Mrs. Spangler testified that she took M.R.S. and R.D.S. to San Angelo to remove the girls from their trailer where Spangler and a friend were undertaking a "drug cook-off."

Joyce Middleton, Mrs. Spangler's mother, testified that she witnessed Spangler threaten to kill Mrs. Spangler and that he repeatedly beat her while M.R.S. watched. Middleton testified that Spangler threatened to kill two DPRS workers and blow up the DPRS building. Additionally, Middleton testified that Spangler drank every night and awakened her one morning while staying at her place in Prairie Hill by playing with her "private." Middleton also recalled that Spangler caused M.R.S. to cry when he washed her, because he "played with her the wrong way."

Spangler's testimony reveals that he has been married five times, has eleven or twelve children, and considers himself to be an alcoholic. He testified that on June 25, 1995, he was arrested for driving while intoxicated with his daughters in the car. DPRS took the girls from him after the arrest because DPRS and the Limestone County Court told him not to drink around the girls.

Spangler admitted that he had hit Mrs. Spangler and threatened to kill her in the presence of M.R.S. He further testified that he once gave forty dollars to the family taking care of the girls and took money over almost weekly. He stated that he plans for M.R.S. to attend college, although his imprisonment has prevented his savings for this purpose. Spangler failed to state any future plans for R.D.S.

Anna Clark, a conservatorship case worker for DPRS, testified to the following:

- DPRS' first referral occurred after Spangler's indictment for rape charges in Limestone County in 1994.
- DPRS' second referral for physical neglect and neglectful supervision occurred in September of 1994.
- The plan of service for Spangler included participation in psychological evaluations, parenting classes, and a sex offenders class as well as maintaining stable employment and a home free of hazards.
- Reports from a September 1994 visit stated that the parents were extremely dirty and the house odorous, while Spangler appeared drunken and slurred his speech. The nipple of M.R.S.' baby bottle was filthy, and her formula was spoiled.
- Observation of Spangler's house in November 1996 revealed fly infestation and odors emanating from inside the house.
- Reports of Spangler's wife's house, where M.R.S. and R.D.S. resided after Spangler separated from his wife, indicated that the small quantity of food in the refrigerator was spoiled. Nails protruded from the top of the one doorway all the way to the floor in addition to the presence of exposed wiring. Additionally, soiled sheets covered the beds, and broken glass was scattered across the back yard. Clark stated that the conditions of the house were dangerous for the girls.
- During Spangler's visitation with his daughter M.R.S., she began crying and refused to stay in the observation room with him.
- When informed that DPRS was filing a petition to terminate his parental rights, Spangler stated that if anyone tried to take away his children, he would kill them.
- Spangler repeatedly threatened to kill Clark in person and threatened her and her supervisor over the phone.
- Clark concluded that termination of Spangler's parental rights would be in the best interest of M.R.S. and R.D.S.

Dr. James N. Shinder, a clinical psychologist, testified to performing a psychological exam on Spangler on December 19, 1994, which revealed a criminal personality prototype with antisocial traits and qualities. The exam also indicated that Spangler is aggressive, relies on violence to resolve matters, and relates to others based on intimidation

and manipulation. Additionally, Dr. Shinder testified that Spangler became angry during his sessions and frequently spoke about guns, explosives, and stabbing people.

Jesse Guardiola, a supervisor at DPRS, testified that Spangler threatened to kill him over the phone. Guardiola stated that the parental rights of Spangler should be terminated in part because M.R.S and R.D.S. are very adoptable and are unlikely to be separated from each other.

Debbie Shehorn, a staff therapist for Dr. Shinder, testified that M.R.S. recalled her father fighting with her mother and an incident where he knocked her down and "pummeled" her with his fists. Shehorn testified that M.R.S. expressed very slight remorse or sadness over her separation from her father. Further, Shehorn witnessed M.R.S. state her desire for parents who will be her parents forever. According to Shehorn, M.R.S. did not cry when she was told that parental rights would be terminated.

Sheila Robertson, the court appointed special advocate for M.R.S. and R.D.S., stated that in October 1996 she accompanied Clark to Mrs. Spangler's house and that the conditions at the house, such as flies in the house and broken glass in the yard, were as Clark testified. Robertson testified that termination of Spangler's parental rights was in the best interest of the children. Further, she testified that M.R.S. told her in March of 1997 that she wants to be adopted.

Dwain Thomason, a farmer and postal employee in Prairie Hill, testified that Spangler's wife worked for him and he recalled seeing Spangler intoxicated at his place.

Peggy Anderson of Coolidge testified that Spangler and his family lived in a trailer behind her house. She recalled cleaning out spoiled baby bottles when she babysat M.R.S. and R.D.S. and that young R.D.S. remained in her car seat for long periods of time. Anderson testified that not only did she hear Spangler fighting with Mrs. Spangler, but sometimes the girls came over to tell her they were fighting again. One night, according to Anderson, police even came out to Spangler's trailer.

Charles Cotton testified that Spangler worked for him at a cemetery for two years and eight months. During this time, he recalled that M.R.S. and R.D.S. were dirty when he saw them. Cotton testified that Spangler was a trusted employee to whom he loaned money and helped retain a lawyer after Spangler was charged with raping a young girl. Spangler lived at the cemetery prior to his arrest for retaliation against DPRS. Cotton testified to hearing Spangler speak of violence and he knew Spangler was charged and convicted of threatening another man with a knife in 1993. Cotton testified that his nephew, who has one adopted child, had inquired about adopting M.R.S. and R.D.S.

Virginia Pate, the former owner of the wrecking yard where Spangler worked, testified that Mrs. Spangler, M.R.S., and R.D.S. began living with her after Spangler's imprisonment in September 1995. Pate testified that M.R.S. and R.D.S. lived with them for one and a half years and Spangler never gave money to support them, although he bought diapers for R.D.S. Pate testified that she has raised six children and has filed an application to adopt M.R.S and R.D.S. if Spangler's parental rights are terminated.

Since termination of parental rights requires that the trier of fact make a finding by clear and convincing evidence, this court will only sustain a point of error alleging insufficient evidence if the trier of fact could not reasonably have found the existence of the fact to be established by clear and convincing evidence. Accordingly, the question is whether the jury reasonably could have found clear and convincing evidence to prove that Spangler either: (1) engaged in conduct or knowingly placed the children with persons who have engaged in conduct which endangers the physical or emotional well-being of the children; or (2) failed to support his children for a period of twelve consecutive months.

Additionally, the court asks whether the jury reasonably could have found by clear and convincing evidence that termination of the parent-child relationship is in the best interest of the children. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996). If the evidence

shows a course of conduct on Spangler's part "which has the effect of endangering the physical or emotional well-being of" his children, a finding under § 161.001(1)(E) will be upheld. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 534 (Tex.1987). Likewise, if the evidence shows that Spangler failed to support his daughters during a period of twelve consecutive months ending within six months of the date of the filing of the petition, a finding under § 161.001(1)(F) will be upheld.

A parent's abuse of a spouse can suffice to support termination of the abuser's parental rights. *See Lucas v. Department of Protective & Regulatory Servs.,* 949 S.W.2d 500, 503 (Tex.App.—Waco 1997, pet. denied); *In Interest of B.J.B.,* 546 S.W.2d 674, 676 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). Evidence of a parent's imprisonment may contribute to a finding that the parent engaged in a course of conduct which endangered a child's physical or emotional well-being. *Boyd,* 727 S.W.2d at 534; *Harris v. Herbers,* 838 S.W.2d 938, 942 (Tex.App.—Houston [1st Dist.] 1992, no writ).

A father has the legal duty to support his child, even when not ordered by the trial court to make payments of support. *Laslie v. Cole,* 465 S.W.2d 811, 813 (Tex.Civ.App.—Corpus Christi 1971, no writ). Occasional gifts are insufficient to fulfill a parent's obligation of support. *Homfeld v. Pence,* 487 S.W.2d 224, 228 (Tex.Civ.App.—El Paso 1972, no writ).

Middleton, Anderson, Mrs. Spangler, and Spangler himself testified that he abused Mrs. Spangler by hitting her with his open hand, "pummeling" her with his fists, kicking her, and threatening to kill her, all in the presence of M.R.S. and R.D.S. From this evidence, the jury could reasonably have found the existence of spousal abuse by clear and convincing evidence, such that termination of parental rights is appropriate. *B.J.B.,* 546 S.W.2d at 676.

At the time of trial, Spangler was incarcerated, serving a sentence stemming from felony retaliation. Spangler spent a considerable amount of time in prison and jail on other charges during the years his family was under a DPRS plan of service. Based on this evidence, the jury could have reasonably found by clear and convincing evidence that Spangler engaged in a course of conduct which endangered his daughters' physical or emotional well-being such that termination of his parental rights was appropriate. *See Boyd,* 727 S.W.2d at 534.

## CONCLUSION

Spangler is a man of 49 years, who has been married five times, claims to have eleven or twelve children, and admits to alcoholism. He admits to having regularly abused his wife in the presence of his daughters. He was arrested for driving while intoxicated with his daughters in the car. His mother-in-law testified that he caused M.R.S. to cry when he washed her because he "played with her in the wrong way." His most recent troubles include indictments for the sexual assault of a fourteen year old girl, threatening a man with a knife, and felony retaliation against DPRS employees.

Under the clear and convincing standard of review, we find that the jury reasonably could have found that Spangler engaged in conduct or knowingly placed the children with persons who have engaged in conduct which endangered the physical or emotional well-being of his children. Having found sufficient evidence of the endangerment ground, we need not address the failure to support ground.

Likewise, after consideration of the factors set out in *Holley,* and the evidence before the trial court, we find that the evidence supports the trial court's finding that the best interest of the children will be served by terminating Spangler's parental rights. *Holley,* 544 S.W.2d at 371–72.

Therefore, we overrule Spangler's point of error and affirm the judgment of the trial court.

CUMMINGS, J., concurring.

CUMMINGS, Justice, concurring.

Although I agree with the majority's decision to affirm the termination of Spangler's parental rights, I question their decision to

adopt a higher standard of review for factual sufficiency points when the burden of proof at trial is by "clear and convincing evidence." As I recently articulated in *In re D.L.N.*, another termination proceeding, I believe appellate courts should continue to apply the traditional factual sufficiency standard established by the Supreme Court. *In re D.L.N.*, 958 S.W.2d 934, 939–41 (Tex.App.—Waco 1997, no pet. h.).

The purpose of a factual sufficiency review is to determine whether the appellant is entitled to a new trial because, after looking at all the evidence, it appears that the jury's answer is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951). This method of evaluating the factual sufficiency of the evidence, which has been directed by the Supreme Court in the cases cited above, appropriately balances the appellate court's need to review the weight of the evidence presented at trial while it prevents the reviewing court from simply substituting its judgment for that of the factfinder. We have said many times that the factfinder has the responsibility to resolve any disputes about the weight and credibility of the evidence presented at trial, and I believe the factfinder's decision should not be second-guessed on appeal unless it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Libhart v. Copeland,* 949 S.W.2d 783, 803 (Tex.App.—Waco 1997, no writ); *Jacobs–Cathey Co. v. Cockrum,* 947 S.W.2d 288, 295–96 (Tex.App.—Waco 1997, writ denied); *Lance v. USAA Ins. Co.,* 934 S.W.2d 427, 428–29 (Tex.App.—Waco 1997, no writ); *see generally Lucas v. Texas Dep't of Protective and Regulatory Services,* 949 S.W.2d 500, 502 (Tex.App.—Waco 1997, pet. denied).

The majority's decision to adopt a higher standard of review relies on the fact that a termination of parental rights must be proved at trial by "clear and convincing evidence" and not simply by a preponderance of the evidence. However, I do not find this distinction to be a convincing reason to reformulate the factual sufficiency standard of review set by the Supreme Court. As I discussed in *D.L.N.*, criminal cases have an even higher burden of proof at trial, "beyond a reasonable doubt," but on appeal we continue to apply the traditional factual sufficiency standard of the Supreme Court which was adopted by the Court of Criminal Appeals in *Clewis v. State,* 922 S.W.2d 126, 129, 131 (Tex.Crim.App.1996) (stating that their decision "harmonize[d] the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency"); *In re D.L.N.*, 958 S.W.2d at 940.

Consequently, because I disagree with the majority's decision to adopt a higher factual sufficiency standard of review for termination cases, I cannot join the court's opinion. However, I wholeheartedly agree with the majority's conclusion that Spangler's parental rights should be terminated either under the traditional factual sufficiency standard which I have urged or under the higher standard utilized by the majority.