In the Interest of C.W.C.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-051-CV

IN THE INTEREST OF C.W.C.

 

From the County Court at Law
Ellis County, Texas
Trial Court # 99-3529MH
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      After a hearing, the trial court committed C.W.C. to a mental health care facility for in-patient care for a period not to exceed ninety days. C.W.C. appeals from that order, arguing
that the evidence is both legally and factually insufficient to sustain the court’s order and that
the court erred by considering information that had not been presented to it as evidence during
the hearing. Although we find that the evidence is legally sufficient to support the court’s
order, we conclude that it is not factually sufficient to do so and will reverse the judgment.
      The State sought to have C.W.C. committed to a mental health care treatment facility
under the authority of section 574.034 of the Texas Health and Safety Code. Tex. Health &
Safety Code Ann. § 574.034 (Vernon Supp. 2000). The court found that the commitment
was proper because C.W.C. suffered from a mental illness and, as a result, was likely to cause
serious harm to himself or would continue to experience deterioration in his ability to function
independently and was unable to make a rational decision on submitting to treatment. Id. §
574.034(a)(2)(A), (a)(2)(C). In his first two points of error, C.W.C. claims that there is “no
evidence” to support the commitment order and “insufficient” evidence to support the findings
of the trial court.


 In his third point, C.W.C. argues that the court should have dismissed the
action because the State failed to produce any evidence of a continuing course of conduct or a
recent overt act as required by subsection (d). C.W.C. complains in his fourth point that the
court based its decision on information presented to it outside of the hearing.
Commitment under section 574.034
      Section 574.034 of the Texas Health and Safety Code provides, in the relevant portion, as
follows:
§ 574.034. Order for Temporary Mental Health Services
 
(a) The judge may order a proposed patient to receive court-ordered temporary
inpatient mental health services only if the judge or jury finds, from clear and
convincing evidence, that:
 
(1) the proposed patient is mentally ill; and
 
(2) as a result of that mental illness the proposed patient:
 
                        (A) is likely to cause serious harm to himself;
 
                        (B) is likely to cause serious harm to others; or
 
                        (C) is:
 
(i) suffering severe and abnormal mental, emotional, or physical
distress;
 
(ii) experiencing substantial mental or physical deterioration of the
proposed patient's ability to function independently, which is
exhibited by the proposed patient's inability, except for reasons of
indigence, to provide for the proposed patient's basic needs,
including food, clothing, health, or safety; and
 
(iii) unable to make a rational and informed decision as to whether
or not to submit to treatment.

* * *
 
(c) If the judge or jury finds that the proposed patient meets the commitment
criteria prescribed by Subsection (a), the judge or jury must specify which criterion
listed in Subsection (a)(2) forms the basis for the decision.
 
(d) To be clear and convincing under Subsection (a), the evidence must include
expert testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm:

                  (1) the likelihood of serious harm to the proposed patient or others; or
 
(2) the proposed patient's distress and the deterioration of the proposed
patient's ability to function.

Id. § 575.034(a), (c), (d).
      To support a commitment order under this section, the State must establish at least one of
the three criteria in subsection (a)(2) by clear and convincing evidence. In re R.S.C., 921
S.W.2d 506, 513 (Tex. App.—Fort Worth 1996, no writ); Mezick v. State, 920 S.W.2d 427,
430 (Tex. App.—Houston [1st Dist.] 1996, no writ). “Clear and convincing evidence” is “that
measure or degree of proof which will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegation sought to be established.” Spangler v. Texas Dep’t
of Protective and Regulatory Services, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.)
(quoting In re G.M., 596 S.W.2d 846, 847 (Tex. 1980)). 
      The statute sets out two specific evidentiary requirements for the proof supporting the
request for court ordered mental treatment. Tex. Health & Safety Code Ann. §
574.034(d). First, the State must present expert testimony. Id. Bare expert opinion alone is
not sufficient to satisfy this requirement. In re Breeden, 4 S.W.3d 782, 784 (Tex. App.—San
Antonio 1999, no pet.); Johnstone v. State, 988 S.W.2d 950, 953 (Tex. App.—Houston [1st
Dist.] 1999), rev’d on other grounds, 43 Tex. Sup. Ct. J. 496, 2000 WL 266701 (Tex. 2000)
(Johnstone II). Rather, the evidence must also show the facts on which the expert’s testimony
is based. Id. However, the expert’s testimony regarding the underlying facts can be sufficient
to show the factual basis for his opinion, independent corroboration of those facts is not
required. Lopez v. State, 775 S.W.2d 857, 859 (Tex. App.—San Antonio 1989, no writ). 
Second, there must be evidence of either a recent overt act or a continuing pattern of behavior
that tends to confirm the likelihood that the patient may harm himself or others or tends to
confirm the patient’s distress and deterioration. Tex. Health & Safety Code Ann. §
574.034(d); In re Breeden, 4 S.W.3d at 784; Johnstone v. State, 961 S.W.2d 385, 388 (Tex.
App.—Houston [1st Dist.] 1997, no pet.) (Johnstone I). Thus, under this statute, the State
must establish the elements required by section 574.034(a) to obtain a commitment order, and,
to be sufficient, the evidence in support of those elements must satisfy section 574.034(d). 
Our review of the evidence supporting a commitment order
       When we review a no-evidence challenge to the sufficiency of the evidence to support a
commitment order, we consider only the evidence and inferences that tend to support the order
and disregard all evidence and inferences to the contrary. In re R.S.C., 921 S.W.2d at 511. If
there is more than a scintilla of evidence to support the order, the complaint must be rejected. 
Id. Thus, the requirement of “clear and convincing” evidence does not change the standard of
review of a no-evidence complaint. Bill Vance, The Clear and Convincing Evidence Standard
in Texas: A Critique, 48 Baylor L. Rev. 391, 413-14 (1996).
      However, we apply a different standard of review for a factual sufficiency challenge to a
finding that must be based on clear and convincing evidence than we do to a finding that is
based on a preponderance of the evidence. Spangler, 962 S.W.2d at 257. When we consider
whether the evidence is factually sufficient to support a finding which must be shown by clear
and convincing evidence, we review all of the evidence and sustain the point only if the trier of
fact could not reasonably find the existence of the fact to be established by clear and
convincing evidence. Id.; In re L.R.M., 763 S.W.2d 64, 66-67 (Tex. App.—Fort Worth 1989,
no writ). We may sustain the point when (1) the evidence is factually insufficient to support a
finding by clear and convincing evidence, or (2) a finding is so contrary to the weight of
contradicting evidence that no trier of fact could reasonably find the evidence to be clear and
convincing. Id. 
The evidence
      At the hearing, the State presented the testimony of Dr. John Methner, a psychiatrist
employed as the director of judicial psychiatric services at Terrell State Hospital. Dr. Methner
testified that C.W.C. was suffering from “schizo effective disorder, bipolar type.” Methner
based his diagnosis on the facts that C.W.C. was “fairly grandiose,” has a “high labile mood,”
which would swing from “very flat to extremely hyper,” that C.W.C. would “get manic” and
his thoughts would “race” becoming “loose, tangential, [and] flightive.” C.W.C. displayed
“loosened associations” which Methner could not follow or put in any logical manner subject
to interpretation. In Methner’s clinical opinion, C.W.C. was incapable of making an informed
decision on whether to submit to treatment.
      According to Methner’s records, C.W.C. had been hospitalized four times between
September 1999 and December 1999: September 23 to October 21, November 10 to November
29, December 9 to December 14, and December 14 through December 29, the day of the
hearing. Methner had “concerns” that C.W.C. would cause harm to himself and would
continue to deteriorate if he were not hospitalized. He was “very comfortable” that C.W.C.
showed clear deterioration over the previous months because he had had multiple
hospitalizations which demonstrated that C.W.C. “just can’t make it in an outpatient basis, that
he is decompensating and deteriorating to the degree that he is being picked up and brought
into an impatient care unit which means that he has fairly severe inability to function in a lesser
restrictive environment of care.”
      Methner’s concern that C.W.C. might harm himself was based on his fear that C.W.C.
was not “taking appropriate care – personal care, actually probably not bathing and eating
correctly.” On cross-examination, he indicated that “those type of people [i.e., individuals
suffering from the condition afflicting C.W.C.] . . . don’t pay attention to a lot of realties, i.e.
bathing, oral hygiene, changing their clothes appropriately, et cetera”, actions which “could or
couldn’t be” a serious risk to C.W.C. absent hospitalization. Additionally, Methner thought
“that when [C.W.C.] approaches people in a manic phase and a loud voice that he could get
into some trouble [and] in particular [when he] approaches women and is intrusive and
inappropriate . . . problems can result in other people responding and harming him.” The
“specific harm” Methner feared for C.W.C. was that “he [would] continue to deteriorate and
suffer from a major mental illness and be dysfunctional in both thought and behavior.” As a
psychiatrist, Methner believed that C.W.C.’s mental illness alone was serious harm even
though he acknowledged that the illness alone was not sufficient to meet the requirements of
the law. See Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no
writ) (“Evidence which merely reflects that an individual is mentally ill and in need of
hospitalization is no evidence that the statutory standard has been met.”).
      C.W.C. testified at the hearing as well. He disagreed with Methner’s diagnosis, claiming
that he suffered from obsessive compulsive disorder. He felt that his current medication
regime was the “perfect” combination to treat his condition and, so, was hesitant to change. 
However, he acknowledged that a doctor was in a better position than he to determine what
medications he should take and asserted that he would agree to change medications if “any
highly trained” doctor thought he should. C.W.C. was adamant that he was not a threat to
either himself or anybody else.
Legal sufficiency of the evidence
      The court ordered C.W.C. committed because it found that he was a danger to himself and
risked deterioration if not hospitalized. Either finding, if supported by the evidence, would be
sufficient to uphold the commitment order.
Danger to himself
      Both “factual” basis for Methner’s opinion on C.W.C.’s dangerousness to himself
involved hypothetical situations which “could or couldn’t” pose a threat to C.W.C. An
expert’s assumption on the basis of a hypothetical situation is not sufficient to meet the
statutory requirement of a “recent overt act.” See id.; see also In re T.G., 7 S.W.3d 248, 251
(Tex. App.—Dallas 1999, no pet.) (holding that the expert’s testimony as presented was legally
insufficient to establish that an incident even occurred and so was no evidence about an overt
act). Thus, there is no evidence of a recent act or continuing pattern of behavior to support the
court’s finding that C.W.C. would be likely to cause serious harm to himself if he were not
hospitalized. 
Continued deterioration
      However, there is some evidence of a recent act or pattern of behavior to support a finding
that C.W.C. will continue to deteriorate if he is not hospitalized. The primary evidence
offered by the State to support this evidentiary requirement was the fact that C.W.C. had been
hospitalized three or four times in the three months leading up to the commitment hearing. 
Methner’s testimony demonstrated an accelerating pattern of hospitalizations, with shorter
periods of time between each hospitalization. We conclude that the Methner’s testimony is
some evidence of a pattern of behavior to support a finding that C.W.C. will continue to
deteriorate if he is not hospitalized. Tex. Health & Safety Code Ann. § 574.034(d); In re
R.S.C., 921 S.W.2d at 511.
      Although there is no evidence of a recent overt act, there is some evidence of a recent
pattern of behavior which tends to show that C.W.C. will continue to deteriorate if he is not
hospitalized. Thus, the evidence is legally sufficient to support the commitment order.
Factual sufficiency of the evidence
      Because we found no evidence of a recent overt act, we must consider the factual
sufficiency of the evidence supporting only the finding that C.W.C. risked continuing
deterioration absent hospitalization. Although Methner’s testimony is some evidence to
support this finding, we conclude that the evidence as a whole is not factually sufficient.
       Methner did not testify to the behavior that led to C.W.C.’s repeated hospitalizations. He
did not indicate whether those hospitalizations were voluntary or involuntary. The mere fact
that C.W.C. has been repeatedly hospitalized is some evidence that he must be hospitalized to
prevent deterioration, but without some showing of the causes of his hospitalizations it does
not rise to the level of clearly and convincingly establishing the need for hospitalization. 
Absent some evidence of the behavior that led to the hospitalizations, the evidence of a pattern
of behavior tending to show a risk of continued deterioration is factually insufficient to support
the commitment order. Tex. Health & Safety Code Ann. § 574.034(d). Thus, we find the
evidence factually insufficient to support the court’s finding that C.W.C. will continue to
deteriorate if he is not hospitalized. Id.; Spangler, 962 S.W.2d at 257.
Conclusion
      Because there is some evidence to establish a continuing pattern of behavior which tends to
show that C.W.C. risked deterioration if not hospitalized, we overrule point one. However,
we sustain point two because the evidence supporting that conclusion is not sufficient to allow
the trier of fact to reasonably find the continuing pattern of behavior by clear and convincing
evidence. We do not reach points three or four. Having sustained point two, we reverse the
court’s commitment order and remand this cause for further proceedings. 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Reversed and remanded
Opinion delivered and filed August 30, 2000
Do not publish