IN THE
TENTH COURT OF APPEALS


No. 10-09-00007-CV

IN THE INTEREST OF K.B.C., A CHILD

From the 170th District Court
McLennan County, Texas
Trial Court No. 2008-1731-4

MEMORANDUM OPINION

Ashley, K.B.C.'s mother, filed a petition to terminate the parental rights of K.B.C.'s father, John, alleging that termination of his parental rights would be in the child's best interest and that he knowingly engaged in criminal conduct that resulted in (i) his conviction of an offense and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q) & (2) (Vernon 2009). Ashley also requested that the court grant K.B.C. a name change so that K.B.C. and Ashley would have the same last name. At a hearing at which John did not appear, the trial court granted the name change for K.B.C. After a subsequent termination hearing, the court terminated John's parental rights. John, who has been appearing *pro se* throughout these proceedings,

appeals the trial court's termination order. We will reverse the trial court's termination order.

The natural right that exists between parents and their children is one of constitutional dimension. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right to "the companionship, care, custody and management" of his or her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)). Therefore, in a case terminating parental rights, the proceedings are strictly scrutinized, and the involuntary termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the movant must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must

find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766.

In his first and third issues, John contends that the evidence is legally and factually insufficient to support termination of his parental rights.

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

Subsection 161.001(1)(Q) warrants termination of parental rights when a parent knowingly engaged in criminal conduct, resulting in the parent's conviction of an offense, and the parent is both incarcerated and unable to care for the child for at least two years from the date the termination petition was filed. Tex. Fam. Code Ann. § 161.001(1)(Q). Incarceration and a parent's inability to care are separate requirements for termination of parental rights under subsection 161.001(1)(Q)(ii). *See In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003), the supreme court held that subsection Q's time period applies prospectively and stated, "Thus, if the parent is convicted and sentenced to serve at least two years and

will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected."

A two-year prison sentence does not automatically meet subsection Q's two-year imprisonment requirement, however. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). In some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. *Id.* A parent sentenced to more than two years might well be paroled within two years. *Id.* at 108-09. Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years. *Id.* at 109. However, mere introduction of parole-related evidence does not prevent a fact-finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. *Id.* Parole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely with the parole board. *Id.*

To support termination under subsection Q, Ashley must thus prove that John's criminal conviction would result in confinement for at least two years from the date the petition was filed. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q). Ashley filed her original termination petition on May 6, 2008, and amended the petition on July 3, 2008. Under subsection Q, "two years from the date of filing the petition" would be May 6, 2010.

The final termination hearing in this case was held on November 21, 2008. John appeared via teleconference. During the hearing, Ashley testified that John was currently incarcerated and that he had been incarcerated numerous times. On cross-

examination, John testified that he had been arrested for theft in 1996, terroristic threat in 1997, burglary of a habitation in 1999, evading arrest in 2001, evading arrest and injury to a person with a motor vehicle in 2003, and failure to stop and render aid in 2003. John stated that failure to stop and render aid was "what I got my time for." He testified that he is up for parole every year and "see[s] parole in February [of 2009] now." He stated that he had gone through some problems when he was first incarcerated, but he had since been "trying to get it together." He stated that he is involved with a lot of programs, getting a lot of help, and knows he is now a different person.

No evidence was presented regarding the length of John's sentence or his projected release date. Furthermore, although it is clear that John was incarcerated at the time of the termination hearing, it is not clear from the record of the hearing whether he was continuously confined or imprisoned from the date the petition was filed until the date of the termination hearing.

For these reasons, we hold that the evidence was legally insufficient for a reasonable factfinder to form a "firm belief or conviction" that John's criminal conviction would result in confinement for at least two years from the date the petition was filed, and we sustain this issue. We further hold that the trial court erred in terminating John's parental rights under subsection 161.001(1)(Q). We need not address John's other issues. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's termination of John's parental rights. In the interest of justice, we remand the cause for another trial. *See* TEX. R. APP. P. 43.3(b).

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray dissents. A separate opinion will not issue. He notes, however, the principle problem with the majority's analysis is the refusal to accept reasonable inferences from the evidence presented and the requirement of direct evidence to rise to the level of clear and convincing evidence. Reasonable inferences from the evidence presented can rise, as they do in this case, to meet the requirement of clear and convincing evidence. I respectfully dissent. Further, the court has failed to address the issue regarding the name change which does not appear to be in any way impacted by the new trial.)
Reversed and remanded
Opinion delivered and filed September 30, 2009
[CV06]