

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00311-CV

## IN THE INTEREST OF B.K., A CHILD

### From the County Court at Law No. 2
### Johnson County, Texas
### Trial Court No. D201100072

## MEMORANDUM OPINION

Raising two issues, Appellant S.K. appeals the trial court's termination of her parental rights to B.K. after a bench trial. We will affirm.

**Appointment of Counsel**

In January of 2011, the Department received a referral alleging neglectful supervision and physical abuse of B.K. by S.K. and drug use by S.K. and her then-boyfriend. In the initial contact, S.K. admitted recent illegal drug use (marijuana and methamphetamine) to the Department's investigator, so a safety plan was put in place for the boyfriend's mother and stepfather to supervise B.K. with S.K. and for S.K. to complete an assessment. Rather than following up with the assessment, S.K. told the Department's investigator that she was sending B.K. to live with J.K., B.K.'s father, so

that S.K. could "be done with this" and "so that C.P.S. would leave her alone."

B.K. then lived with J.K. in Dallas for a while after he passed an initial drug test, but they both subsequently returned to Johnson County to live with J.K.'s mother. During J.K.'s assessment several months later, he tested positive for drugs, and the Department created another safety plan calling for J.K.'s mother to supervise B.K. with J.K. until a family team meeting could occur.[1]

On April 2, 2011, S.K. and her then-boyfriend were arrested for drug possession. With S.K. in jail and because no appropriate caregiver could be found for B.K., the Department filed for emergency removal on April 6 and placed B.K. in foster care.

S.K. was served with the petition in jail, and she filed a written answer stating that she wanted to attend the "court hearing" and to "fight to keep [her] daughter." A family service plan was developed for and signed by S.K. on May 16, 2011, and it became part of the trial court's order dated June 6, 2011. S.K. did not complete any of her court-ordered services. During the pendency of the case, S.K. visited B.K. only three times, with the last visit occurring on June 21, 2011. S.K.'s last contact with the Department was on July 14, 2011.

S.K. did not attend any status or permanency hearings, and she did not file an indigence affidavit or request appointment of counsel. On March 26, 2012, the trial court appointed counsel for S.K. on its own motion. Because S.K.'s lawyer could not locate her, on May 25, 2012, the trial court provided him with funds to hire a private investigator to try to locate S.K. Trial was set for August 7, 2012.

---

[1] J.K. later voluntarily relinquished his parental rights to B.K.

At trial, S.K.'s lawyer told the trial court that S.K. had been located, that he had been provided with sufficient time and funds to locate her, and that his office had contacted her but were unable to arrange a meeting with her. He said that he believed S.K. knew of the date and time of the trial because his office had informed her of it by telephone. Because S.K. was not present at trial, her lawyer announced that he was not ready to proceed, but the trial court proceeded with the trial. A motion for continuance was not filed.

In her first issue, S.K. asserts that the trial court erred and violated due process in "waiting" over fifteen months after B.K.'s removal (and slightly less than five months before trial) to appoint counsel for S.K. Because section 107.013 of the Family Code contains no timetable for the appointment of counsel for an indigent parent in opposition to termination, the timing of appointment of counsel is a matter within the trial court's discretion. *See In re C.Y.S.*, No. 04-11-00308-CV, 2011 WL 5971068, at *4 (Tex. App.—San Antonio Nov. 30, 2011, no pet.) (mem. op.); *In re A.M.*, No. 13-11-00304-CV, 2011 WL 5844526, at *3 (Tex. App.—Corpus Christi Nov. 22, 2011, no pet.) (mem. op.); *Melton v. Tex. Dep't. Fam. & Prot. Serv's.*, No. 03-08-00168-CV, 2010 WL 668917, at *3 (Tex. App.—Austin Feb. 25, 2010, no pet.) (mem. op.).

S.K. did not complete any of her court-ordered services. She did not attend any hearings, including the August 7, 2012 trial, and she never met with her lawyer. S.K. last visited B.K. on June 21, 2011, and her last contact with the Department was on July 14, 2011. Moreover, she never filed an indigence affidavit nor requested appointment of counsel. Given this history and the trial court's discretion in the timing of appointment

of counsel, we hold that the trial court did not abuse its discretion or violate due process. *See, e.g., C.Y.S.*, 2011 WL 5971068, at *5 (trial court did not abuse discretion in appointing counsel ten months after petition's filing and four months before trial); *see also In re J.M.C.*, 109 S.W.3d 591, 597 (Tex. App.—Fort Worth 2003, no pet.) ("a court deciding whether due process requires the appointment of counsel need not ignore a parent's plain demonstration that she is not interested in attending a hearing"). We overrule issue one.

### Best Interest

In her second issue, S.K. asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of B.K.[2] The standards of review for legal and factual sufficiency in termination cases are well-established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). Due process requires the petitioner to justify termination of parental rights by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

In determining the best interest of a child, a number of factors have been

---

[2] The trial court found the following four predicate violations as grounds for termination: (1) S.K. knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; (2) S.K. engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; (3) S.K. constructively abandoned the child; and (4) S.K. failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the child.

considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

The evidence shows that the Department became involved by a referral alleging neglectful supervision and physical abuse of B.K. by S.K. and drug use by S.K. and her then-boyfriend. In the initial contact, S.K. admitted to recent illegal drug use (marijuana and methamphetamine). Rather than completing the initial safety plan's required assessment, S.K. told the Department that she was giving B.K. to B.K.'s father so that she would not have to deal with the Department. Not long thereafter, S.K. was arrested for drug possession (methamphetamine and ecstasy) and J.K. tested positive for drugs,

so the Department removed B.K. and placed her in foster care.

S.K. signed a family service plan on May 16, 2011 that was adopted by a court order, but she did not complete any of the court-ordered services. She visited B.K. only three times while the case was pending, with the last visit occurring on June 21, 2011, when B.K. was age two. S.K.'s last contact with the Department was on July 14, 2011. She did not attend any status or permanency hearings in the case, nor did she attend the trial despite her lawyer's office telling her the date and time.

The Department learned that S.K. was later arrested again (for driving with an invalid license, failure to appear, and an open container) and was in jail from November 30, 2011 to January 10, 2012. At the May 25, 2012 hearing, the Department reported that Ellis County had two outstanding felony arrest warrants for S.K. for possession of a controlled substance and that S.K. had "absconded from the law."

B.K.'s caseworker testified that S.K. had constructively abandoned B.K. and that termination would be in B.K.'s best interest. B.K.'s ad litem told the court that termination would be in B.K.'s best interest, and the CASA representative also recommended termination.

At the time of trial, B.K. was age four and was in a "therapeutic foster home." The caseworker testified that B.K. was "doing wonderful" and was attending day care at a school where her foster father was the principal, and that all of her needs were being met. The Department's permanency goal for B.K. was unrelated adoption. Upon termination, her foster parents would be interested in adoption and B.K. would thus be able to remain where she currently was.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's finding, we hold that a reasonable trier of fact could have formed a firm belief or conviction that termination was in B.K.'s best interest. And viewing all the evidence in a neutral light in relation to the *Holley* factors,[3] we hold that a reasonable trier of fact could have reasonably formed a firm belief or conviction that termination was in B.K.'s best interest. Accordingly, the evidence is legally and factually sufficient on the best-interest finding.

We overrule S.K.'s second issue and affirm the trial court's order of termination.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed December 27, 2012
[CV06]

*(Chief Justice Gray concurs in the judgment to the extent that it affirms the trial court's judgment. A separate opinion will not follow. However, he notes that the standard of review in a case wherein the burden of proof at trial is clear and convincing, in particular appeals of the termination of parental rights, does not involve a review of the evidence in a "neutral light" as expressed in the conclusion on page 7 of the opinion. The Texas Supreme Court was very specific in expressing not only the standard of review, but in also expressly rejecting all other articulations, when it stated: "But in the interest of uniform decision-making, we reject any articulation of the standard that

---

[3] *See In re I.G.*, ___ S.W.3d ___, ___, 2012 WL 4867583, at *5 (Tex. App.—Amarillo Oct. 15, 2012, no pet. h.) (viewing all the evidence in neutral light for factual sufficiency); *Gibbs v. Tex. Dept. Fam. & Prot. Serv.'s*, No. 03-11-00320-CV, 2012 WL 2979048, at *9 (Tex. App.—Austin July 19, 2012, no pet.) (mem. op.) (same); *In re N.A.*, No. 02-10-00022-CV, 2010 WL 3834640, at *4 (Tex. App.—Fort Worth Sept. 30, 2010, no pet.) (mem. op.) (same).

varies from the standard we announce today." *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). I am uncertain why this Court, or other courts, would express the standard of review in any language other than that of the Texas Supreme Court when it stated: "We hold that the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* at 25. In the dissenting opinion in *In re M.A.H.,* Chief Justice Gray explains the distinction between the Supreme Court's articulation of legal and factual sufficiency review in this type of appeal and no useful purpose is served by reexamining that issue or trying to change or rearticulate the standard in this appeal. *In re M.A.H.,* No. 10-02-00234-CV, 2004 Tex. App. LEXIS 6913, *15-18 (Tex. App.—Waco July 28, 2004, no pet.) (Gray, C.J., dissenting).)