11th Court of Appeals

 Eastland, Texas

  Memorandum Opinion

 

In the Interest of J.D.E., M.L.E., &
M.J.E., children

No.  11-02-00194-CV B 
Appeal from Erath County

 

The trial
court entered an order terminating the parental rights of Patricia Desha Elsey
and Rocky Lee Elsey to their children, 3-year-old J.D.E., 2-year-old M.L.E.,
and 1-year-old M.J.E.   Rocky Lee Elsey
appeals from the trial court=s order terminating his parental rights to his children.[1]  We affirm.

The trial
court found by clear and convincing evidence that Rocky:  (1) knowingly placed or knowingly allowed
the children to remain in conditions or surroundings which endangered the
physical or emotional well-being of the children, TEX. FAM. CODE ANN. ' 161.001(1)(D) (Vernon 2002); (2) engaged in
conduct or knowingly placed the children with persons who engaged in conduct
which endangered the physical or emotional well-being of the children, TEX.
FAM. CODE ANN. ' 161.001(1)(E) (Vernon 2002); and (3) failed
to comply with the provisions of a court order that established the actions
necessary for him to obtain the return of the children, TEX. FAM. CODE ANN. ' 161.001(1)(O) (Vernon 2002).  The trial court also found that termination
of the parent-child relationship was in the best interest of the children, TEX.
FAM. CODE ANN. ' 161.001(2) (Vernon 2002).  Rocky brings four issues on appeal in which
he argues that the evidence is both legally and factually insufficient to
support the trial court=s findings.








 In determining whether the evidence is
legally sufficient to support the trial court=s findings,  we consider only
the evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary.  
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001);  Continental Coffee Products  Co. v. Cazarez, 937 S.W.2d 444, 450
(Tex.1996); In re King=s
Estate, 244 S.W.2d 660, 661 (Tex.1951). 
We must affirm the judgment if there is any probative evidence
supporting the judgment.  Jacobs v.
Danny Darby Real Estate, Inc., 750 S.W.2d 174 (Tex.1988);  Yepma v. Stephens, 779 S.W.2d 511 (Tex.App.
- Austin 1989, no writ).  In reviewing
the factual sufficiency of the evidence, we determine whether the evidence is
such that a fact finder could reasonably form a firm belief or conviction about
the truth of the State=s
allegations.  In re C.H., 89 S.W.3d 17
(Tex.2002).

The Texas
Department of Protective and Regulatory Services (the Department) became
involved with the Elsey family on November 13, 2000.  On that day, the Stephenville Police were called to the Elsey
residence at 629 North Clinton Street for a Awelfare concern@ about children living in unsanitary conditions.  Officer Michael L. Hall testified at the
termination hearing that the house did not have running water, which was a
violation of a local code, and that the house was dirty.  The oven was open which provided the only
source of heat for the house.  The
toilet was full and was running over into the floor because there was no sewer
hookup.  Officer Hall stated that there
were dirty mattresses in the house that appeared to be soiled with urine.  Officer Hall testified that the house was
condemned.  The Department was called
concerning the conditions of the house. 
The children were not removed from Rocky and Patricia at that time
because an arrangement was made for the children and Patricia to stay with a
relative.  Rocky was not living with the
family at that time. 

The
Department=s next involvement with the Elsey family came
in December 2000.  There was conflicting
testimony at the termination hearing about the events necessitating the  Department=s involvement.  Pam Pierson, the
manager of the Texaco station in Hico, testified that, in December 2000, Rocky
and Patricia were using the pay phone outside of the store.  Rocky, Patricia, and the children were at
the store for over an hour.  Rocky and
Patricia then left the store together in a semi- truck, leaving the children on
the sidewalk outside of the store.  Some
store employees brought the children into the store.  Pierson left the store for a while; and, when she returned, the
children were still there.  Pierson said
that she contacted the children=s maternal grandmother, but that the grandmother would not come to get
them.  Pierson testified that the
employees of the store told her that they had called the Department.  An employee=s son came and took the children. 
Pierson said that, after seeing the children for three or four days Agoing from one house to another to stay,@ she called the Department herself and
learned that the Department had never been notified of the situation.








Rocky
testified at the termination hearing that it was his understanding that
Patricia had arranged for the children to stay with a friend, Melissa Bradley.[2]    Rocky testified that he called the
Department for permission to leave the children with Bradley.  Rocky said that someone at the Department
told him to give Bradley a written document with permission to seek medical
care and  with emergency contact
numbers.  Rocky introduced a copy of the
letter as evidence at the hearing. 
Stacie Croft, with the Department, testified that she received a call
from Rocky in which he told her that they were going to leave the children with
a family friend.   Croft confirmed that
she told Rocky to leave emergency contact numbers with the friend and to leave
a statement concerning medical care.  

Deborah
Nowlin, a supervisor for the Department, testified at the termination hearing
that  on December 5, 2000, the
Department investigated a report that Bradley was no longer willing to care for
the children. The Department removed the children that day, and they were
placed in foster care.  The trial court
entered an order on December 8, 2000, appointing the Department temporary
managing conservator of J.D.E. and M.L.E.[3]  The children were placed in foster
care.  

During the
time J.D.E. and M.L.E. were in foster care, the department developed a service
plan for Rocky and Patricia, and the trial court ordered Rocky and Patricia to
comply with the service plan.  The
service plan required Rocky and Patricia to visit the children, attend
individual counseling, attend parenting classes, and locate and maintain proper
housing.  Nowlin described Rocky and
Patricia=s performance as Aminimal@ in regards to participating in the services offered to them.  Croft testified that Rocky and Patricia
scheduled 30 visits with their children and that they did not attend 14 of
those scheduled visits.  Croft also
stated that Rocky and Patricia had 61 opportunities to attend counseling.  Rocky and Patricia scheduled 32 counseling
appointments; and, of those scheduled, Rocky attended 18 appointments, and
Patricia attended 20 appointments. 








The
children were returned to Rocky and Patricia on November 9, 2001.  The Department remained as temporary
managing conservator of the children. 
The court ordered the Department to Amonitor the placement to ensure that the children [were] in a safe
environment@ and to remove the children Aif circumstances indicate that the home [was]
no longer a safe environment.@ 

On
November 16, 2001, Stephenville police officers responded to a domestic
disturbance call at the Elsey home. 
Officer Hall testified at the termination hearing that the Elseys= neighbors called and reported Aa female being assaulted out in the front
yard.@ 
Officer Hall said that Patricia was Apretty evasive@ about
what had happened.  Another officer
spoke to neighbors who told the officer what had happened.  The officers then confronted Patricia with
the neighbors= statements, and Patricia then informed the
officers that she and Rocky had argued in the front yard.  Patricia told the officers that Rocky
slapped her, causing her to fall.  The
officers talked to Rocky later that day. 
Rocky admitted to the officers that he had argued with Patricia, but he
denied slapping her.  Rocky told the
officers that he had Astumbled
into her and pushed her down.@  Officer Hall said that Rocky
was arrested for assault.  Rocky pleaded
guilty to the assault charge.

Officer
Brit Ferguson testified at the hearing that Patricia came to the Stephenville
Police Department on December 31, 2001, to report that she had been assaulted
by Rocky.  Patricia told Officer
Ferguson that Rocky hit her in the face with his hand and pushed her to the floor.  Patricia said that Rocky then hit her face
against the floor and twisted her wrist. 
Rocky was arrested for the assault on February 25, 2002.  Rocky testified at the termination hearing
that he and Patricia got into an argument and that he hit the walls and busted
the coffee table, but that he never hit Patricia.  Rocky remained in jail until May 9, the first day of the
termination hearing. 








Leeca
Lynch, with the Department, testified at the hearing that she received
information from the Stephenville Police Department that there had been a
domestic violence episode in the home. 
Lynch was making arrangements for Patricia and the children to go to a
shelter because of the domestic violence and because she had learned that they
were going to be evicted from their home. 
Lynch said that, while she was making the arrangements, she received a
call from an employee of another agency who had been to the Elsey home and
found the children home alone.  Lynch
went to the home and knocked on the door, and the door Aswung open.@  J.D.E. and M.L.E were both
standing in the living room, and M.J.E. was screaming and crying.  Lynch called for someone in the house, but
no one answered.  Lynch continued to Aholler@; and, finally, a man came from the back room and said that he was
supposed to be watching the children. 
The man did not know when Patricia had left or when she would
return.  Patricia later returned to the
home.  Lynch testified that the house
was dirty, that there was a bathtub full of water, and that there was laundry
piled up in the kitchen. 

Lynch
testified at the termination hearing that she talked to Patricia about going to
a shelter because of the concerns of domestic violence, because the family was
going to be evicted from the home, and because they had to have a safe
environment for the children.  Patricia
was initially unsure about going to a shelter, but she then began packing
things for the children.   Lynch said
that Patricia then asked what would happen if she did not go to the shelter and
if she let the Department take the children.  
Lynch encouraged Patricia to go to the shelter and explained all of the
benefits to her.   Lynch explained to
Patricia that, if she let the Department take the children, it would be hard
for her to get the children back. 
Patricia released all three children to the Department.  Lynch said that Patricia was unemotional and
that she Anever shed a tear.@  The
trial court entered an order on January 23, 2003, appointing the Department as
temporary managing conservator of M.J.E.

Rocky
testified at the termination hearing that he was doing everything possible to
get his children back.  Rocky said that
if he received custody of the children he planned to move to Oklahoma where he
has family and get a job and a house. 
Rocky stated that he believed the problems with the Department had been
because of Patricia and that he intended to divorce her.  Rocky=s mother, Patricia Murphy, also testified at the hearing that she would
be willing to help with the children if Rocky moved to Oklahoma. 








Section
161.001(1)(E) allows for termination of parental rights if the parent Aengaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child.@  Under subsection (1)(E), the
cause of the danger to the child must be the parent=s conduct alone, including the parent=s actions, omissions, or failures to
act.  In the Interest of S.H.A., 728
S.W.2d 73, 83‑84 (Tex.App. ‑ Dallas 1987, writ ref'd n.r.e.).  Endanger, as that term is used in the
statute, means more than a threat of metaphysical injury or the possible ill
effects of a less‑than‑ideal family environment.  Texas Department of Human Services v. Boyd,
727 S.W.2d 531, 533 (Tex.1987).  It is
not necessary that the conduct be directed at the child or that the child
actually suffers injury.  Texas
Department of Human Services v. Boyd, supra. 
Instead, endanger means to expose to loss or injury or to
jeopardize.  Texas Deprtment of Human
Services v. Boyd, supra.  The specific
danger to the child=s well‑being
need not be established as an independent proposition, but may instead be
inferred from parental misconduct.  In
the Interest of J.J. and K.J., 911 S.W.2d 437, 440 (Tex.App. - Texarkana 1995,
writ den=d).  

The record
shows that Rocky has a history of alcohol abuse and that he has increased anger
when drinking.  Rocky testified that he
is an alcoholic, but that he has Anot drank@ since
December 30, 2002.  Rocky testified that
he has Aseveral@ charges of public intoxication.  
After the children were returned to Rocky and Patricia on November 9,
2001, Rocky was arrested twice for assaulting Patricia.  Rocky was arrested for the second assault on
February 25, 2002, and remained in jail until May 9, 2002.  J.D.E. told her counselor that Aher dad had given boo-boos to her mom.@ A parent=s abuse of a spouse can suffice to support termination of the abuser=s parental rights.  Spangler v. Texas Department of Protective and Regulatory
Services, 962 S.W.2d 253, 260 (Tex.App. ‑ Waco 1998, no pet=n); In Interest of B. J. B. and C. E. B., 546
S.W.2d 674, 676 (Tex.Civ.App. ‑ Texarkana 1977, writ ref=d n.r.e.). 
It is not necessary that the children observe the abusive conduct or
that the State provide expert testimony that the conduct was reasonably
calculated to endanger the physical or emotional well-being of the
children.  See In the Interest of B. J.
B. and C. E. B., supra.  There is also
evidence in the record that the children were left on at least two occasions
without adequate supervision.  The
record also shows that Rocky did not maintain proper housing for the
children.  








We find
that there is probative evidence to support the trial court=s finding that Rocky engaged in conduct or
knowingly placed the children with persons who engaged in conduct which
endangered the physical or emotional well-being of the children.   We additionally find that the trial court  could reasonably form a firm belief or
conviction about the truth of the State=s allegation that Rocky engaged in conduct or knowingly placed the
children with persons who engaged in conduct 
which endangered the physical or emotional well-being of the children.  Rocky=s second issue on appeal is overruled. 
Because we have concluded that there is both legally and factually
sufficient evidence to support the trial court=s finding under Section 161.001(1)(E), we need not address Rocky=s first and third issues regarding the
sufficiency of the evidence to support the trial court=s findings under Section 161.001(1)(D) &
(O).  Only one finding alleged under
Section 161.001(1) is necessary for a judgment of termination.  In the Interest of D.M., B.W., and J.C.W.,
58 S.W.3d 801, 813 (Tex.App. - Fort Worth 2001, no pet=n); In the Interest of S.F., 32 S.W.3d 318,
320 (Tex.App. ‑ San Antonio 2000, no pet=n); see also TEX.R.APP.P. 47.1. 
However, in order to uphold the judgment of termination, we must also
examine the sufficiency of the evidence to support the jury=s finding that termination is in the children=s best interest.  In the Interest of D.M., B.W., and J.C.W., supra.

Some of
the common factors  to evaluate the best
interests of a child include:  (1) the
desires of the child; (2) the emotional and physical needs of the child now and
in the future; (3) the emotional and physical danger to the child now and in
the future; (4) the parental abilities of the individuals seeking custody; (5)
the programs available to assist these individuals to promote the best interest
of the child; (6) the plans for the child by these individuals or by the agency
seeking custody;  (7) the stability of
the home or proposed placement; (8) the acts or omissions of the parent which
may indicate that the existing parent‑child relationship is not a proper
one; and (9) any excuse for the acts or omissions of the parent.   Holley v. Adams, 544 S.W.2d 367, 371‑72
(Tex.1976).

Rocky
testified that he planned to divorce Patricia and move to Oklahoma where he had
family.  Rocky intended to get a job in
Oklahoma and find housing there.  Rocky
testified that he would have Ano problem@
attending any counseling or courses the court imposed.  Rocky=s mother testified that she would be willing to help Rocky if he moved
to Oklahoma.  Daniel Martin, a counselor
who provided services to Rocky and Patricia, testified that the primary issue
with Rocky was alcohol abuse.  Martin
stated that he did not support termination of Rocky=s parental rights.  When asked if he believed Rocky and Patricia were Asalvageable@ as parents, Martin stated that that was a Areasonable possibility.@ 
Martin had spent three or four hours individually with Rocky.  The attorney and guardian ad litem for the
children suggested that the trial court give Rocky and Patricia Aanother bite at the apple.@ 








The record
shows that Rocky did not consistently attend the services that the Department
offered to him.  Rocky testified that
his mother would show him how to raise the children.  However, the record showed that his mother had two other sons,
one of whom was in the penitentiary and the other abused drugs.  Rocky himself had Aseveral@ charges for public intoxication, a charge for harboring a runaway, as
well as one conviction and another pending felony charge for assaulting
Patricia.  When asked Awhat is different about today than...when we
first started this thing?@  Rocky responded, AI reckon nothing.@ 
Rocky further stated that he did not know why the court should give the
children back to them, but then he said that he loved them and wanted to show
that he could care for them.

Kathleen
Baczynski, the counselor for J.D.E., testified that she initially diagnosed
J.D.E. with adjustment disorder with some developmental delays.  She further stated that J.D.E. was
progressing and that most of the progress was occurring in the foster
home.  Baczynski stated that J.D.E.=s foster mother was Aactively trying to help this little girl in
addressing the issues.@  She said that J.D.E. had bonded to the
foster mother and that the foster mother was Aher anchor.@  Baczynski said that the foster home was a Anormal, healthy environment.@  

Croft
stated that she believed that termination was in the best interest of the
children because Rocky and Patricia had not participated in the programs
available to them and because they had not shown the changes necessary to
provide for the children.  Croft stated
that the children needed Alifelong parents@ and that it was in the best interest of the children Ato move them on to adoption.@  We
find that the evidence is both legally and factually sufficient to support the
trial court=s finding that termination of Rocky=s parental rights is in the best interest of
the children.  Appellant=s fourth issue on appeal is overruled.  

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE

 

April 10, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]Patricia Elsey filed a notice of appeal from the trial
court=s order on June 17, 2002.  On January 30, 2003, Patricia filed a motion for voluntary
dismissal of her appeal with this court. 
On February 6, 2003, this court entered an order dismissing Patricia=s portion of the appeal.





[2]The record indicates that Patricia had another child
from a previous relationship who was also left in the care of Melissa
Bradley.  That child was not included in
the termination order that is the subject of this appeal.





[3]M.J.E. was not born at the time the trial court entered
this order.