IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00207-CV

 

In
the Interest of

S.K.D.C.,
T.K.B., and I.J.W., Children,

 

 

 



From the 170th
District Court

McLennan County, Texas

Trial Court No. 2003-3411-4

 



MEMORANDUM  Opinion



 

After a bench trial,
Appellant Lawanda Bell appeals the trial court’s termination of her parental
rights to her three children, S.K.D.C., T.K.B., and I.J.W., complaining in
three issues of the legal and factual sufficiency of the evidence.  We will
affirm.

Background

The
Department of Family and Protective Services (“CPS” or the “Department”)
petitioned the trial court to terminate the parent-child relationship of Lawanda
with S.K.D.C, T.K.B., and I.J.W.  The rights of each child’s father were
previously terminated.  The trial court signed an order terminating Lawanda’s
parental rights on March 24, 2005.

Along with
findings that termination would be in the children’s best interest, the
termination order found two statutory violations:  (1) that Lawanda knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
children (Tex. Fam. Code. Ann. §
161.001(1)(D)) and (2) that
she engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangers the physical or emotional well-being of the
children (Tex. Fam. Code. Ann.
§ 161.001(1)(E)).

Factual Background

      In
August 2003, CPS received a report alleging that S.K.D.C, T.K.B., and I.J.W. were not properly cared for, were not
clean, their home was not clean, and I.J.W. was not fed properly.  George
Davis, a CPS investigator, went to Hillcrest Medical Center, where one-month-old
I.J.W. was receiving care, to discuss with Lawanda the need to set up family-based
services.  I.J.W., who was a low-birth-weight baby most likely due to Lawanda’s
tobacco use during pregnancy, was admitted to Hillcrest because he was
dehydrated and not thriving.  During his ten day stay at the hospital, it was
noted that I.J.W. had only gained three ounces since birth and ate more when
nurses fed him.  The nurses considered Lawanda a “lazy feeder” because she did
not feed the baby enough.

Because of the
feeding problems, a social worker, Melissa James, worked with Lawanda during
I.J.W.’s stay at Hillcrest.  James witnessed arguments between Lawanda and
Nathan Woods, the father of I.J.W.  On one occasion, the Waco Police Department
was called to the hospital due to an altercation between the two.

      CPS next had contact with the
children on September 10th when Lawanda called Davis to request diapers for the
children.  While at Lawanda’s home to deliver the diapers, Estella Lloyd, a CPS
caseworker, smelled marijuana and saw that the living room was “heavy with
smoke.”  Lloyd contacted Davis, and he went to the home with a drug kit. 
Lawanda stated that she was outside hanging clothes and, without her knowledge,
a friend who was watching the children smoked marijuana in the house.  Lawanda
also admitted to taking “one or two hits off a blunt” outside but not in front
of the children.

On September
12th, Nathan Woods reportedly had another altercation with Lawanda and, allegedly
fearing for his child’s safety, took possession of I.J.W.  CPS later discovered
that Woods and I.J.W. moved in with friends who each had extensive criminal
histories.  On September 18th, Lawanda and the children again met with CPS
officials.  At that time it was noted that one of the children had a severe
rash and scratch marks for which Lawanda could not account.  On September 25,
2003, CPS returned to Lawanda’s home and removed the children.

      CPS put Lawanda on a Family
Service Plan so that she could work toward getting her children back.  The plan
required Lawanda to regularly visit with her children at the CPS office and
demonstrate the ability to bond with them, pay child support, submit to drug
testing before visiting with her children, obtain employment, attend parenting
classes, undergo a psychological evaluation, obtain a stable and clean home,
and participate in weekly therapy.  Dr. James Shinder, a psychologist, first
evaluated Lawanda in October 2003.  He recommended substance-abuse treatment,
parenting classes, and individual counseling.  Initially, Lawanda sporadically
attended therapy and visits with her children.  Approximately six to nine
months before trial, Lawanda made an effort to improve.  She began regularly
attending therapy and the scheduled visitations with her children.  She also
completed a drug-treatment program, consistently tested negative for drugs, and
moved into better housing.  However, Lawanda failed to make progress in other
aspects of the Family Service Plan and, based on an August 2004 evaluation, Dr.
Shinder remained concerned about Lawanda’s lack of basic parenting knowledge. 
CPS determined that it was in the best interest of the children to change its
recommendation to termination of Lawanda’s parental rights and to seek adoption
for the children.

Standards of Review

Termination of
parental rights is a drastic remedy and is of such weight and gravity that due
process requires the petitioner to justify termination by “clear and convincing
evidence.”  Spangler v. Texas Dept. of Prot. & Reg. Servs., 962
S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.).  This standard is defined as
“that measure or degree of proof which will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to
be established.”  Id.

In a proceeding
to terminate the parent-child relationship brought under section 161.001 of the
Texas Family Code, the movant must establish two elements by clear and
convincing evidence:  (1) one or more acts or omissions enumerated under
subsection (1) of section 161.001 (termed a predicate violation); and
(2) that termination is in the best interest of the child.  Tex. Fam. Code
Ann. § 161.001 (Vernon Supp. 2005); Swate v.
Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  The
factfinder must find that both elements are established by clear and
convincing evidence, and proof of one element does not relieve the petitioner
of the burden of proving the other.  Holley v. Adams, 544 S.W.2d 367,
370 (Tex. 1976); Swate, 72 S.W.3d at 766.

Both legal and
factual sufficiency reviews in termination cases must take into consideration
whether the evidence is such that a factfinder could reasonably form a firm
belief or conviction about the truth of the matter on which the petitioner
bears the burden of proof.  In re J.F.C., 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal sufficiency review); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).




In a legal sufficiency review, a court
should look at all the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  To give appropriate deference to the
factfinder’s conclusions and the role of a court conducting a legal sufficiency
review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume that the factfinder resolved disputed
facts in favor of its finding if a reasonable factfinder could do so.  A
corollary to this requirement is that a court should disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been
incredible.  This does not mean that a court must disregard all evidence that
does not support the finding.  Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and convincing
evidence.

 

If, after conducting its legal
sufficiency review of the record evidence, a court determines that no
reasonable factfinder could form a firm belief or conviction that the matter
that must be proven is true, then that court must conclude that the evidence is
legally insufficient.

 

J.F.C., 96 S.W.3d at 266.

In a factual
sufficiency review, a court of appeals must give due consideration to evidence
that the factfinder could reasonably have found to be clear and convincing.  Id.

[T]he inquiry must be “whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State’s allegations.”  A court of appeals
should consider whether disputed evidence is such that a reasonable factfinder
could not have resolved that disputed evidence in favor of its finding.  If, in
light of the entire record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a
factfinder could not reasonably have formed a firm belief or conviction, then
the evidence is factually insufficient.  A court of appeals should detail in
its opinion why it has concluded that a reasonable factfinder could not have
credited disputed evidence in favor of the finding.

 

Id. at 266-67 (footnotes and citations omitted).  We view the
evidence in a neutral light when reviewing for factual sufficiency.

Termination Under Section 161.001(1)(D)

      Section 161.001(1)(D) of the
Texas Family Code states that the court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence
that the parent has knowingly placed or knowingly allowed the child to remain
in conditions or surroundings which endanger the physical or emotional
well-being of the child.  Tex. Fam. Code
Ann. § 161.001(1)(D) (Vernon Supp. 2005).  “Endanger” means to expose to
loss or injury or to jeopardize.  Texas Dep’t of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  Threat means more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family
environment.  Id.  However, it is not necessary that the child actually
suffer injury.  Id.  Although this provision addresses the
child’s surroundings rather than the parent’s conduct, conduct by a parent or
other resident of a child’s home can produce an environment that endangers the
physical or emotional well-being of a child.  In the Interest of C.L.C., 119
S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.).

      George Davis testified that
Lawanda’s home was dirty, the children were not clean, and that he saw the
children in a room full of smoke.  He testified that Lawanda was not able to
properly manage her money and often ran out of essentials for the children such
as diapers and milk before the end of the month.  Davis also testified that he was
concerned about domestic violence and that he was aware that the police were notified
several times as a result of disagreements between Lawanda and Nathan Woods.  Dr.
Shinder testified that Lawanda had a history of associating with men who were
either abusive, involved in drugs, or incarcerated, such as the fathers of the
three children.  Lawanda’s therapist, Dr. Stefanie Clawson, testified
concerning Lawanda’s family’s extensive drug history, and the pattern of her
family taking advantage of Lawanda by using her money to support their drug
habits.  Further, Lawanda has relied on her mother, a convicted felon and drug
abuser, and friends such as Megan Calhoun, who admitted to smoking marijuana,
to help take care of the children.

Although there is some
evidence that Lawanda now resides in a better home, has set boundaries with her
family, and has made efforts to associate only with people who can provide a
positive influence in her life, we find that this evidence is not so
significant that a reasonable trier of fact could not have reconciled this
evidence in favor of its finding and formed a firm belief that Lawanda knowingly
placed or knowingly allowed her children to remain in conditions or
surroundings which endangered their physical or emotional well-being. 
Accordingly, Lawanda’s first issue is overruled.

Termination Under Section 161.001(1)(E)

      Section 161.001(1)(E) of the
Family Code provides that a court may terminate the parent-child relationship
if the court finds by clear and convincing evidence that the parent has engaged
in conduct or knowingly placed the child with persons who engaged in conduct
that endangers the physical or emotional well-being of the child.  Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon Supp. 2005).  Endangerment under this section may be shown by evidence that a parent
engaged in a “course of conduct” that endangered the child’s physical or
emotional well-being.  In re J.O.C., 47 S.W.3d 108, 113 (Tex. App.—Waco 2001, no pet.).  The manner in which a parent cares for other children in
the family can be considered in deciding whether the parent engaged in a course
of conduct that endangered a child.  In re D.L.N., 958 S.W.2d 934, 939
(Tex. App.—Waco, 1997, pet. denied).

      Dr. Floyd Barry testified that
Lawanda had a history of drug and tobacco abuse during pregnancy and waited to
receive prenatal care until late in her pregnancy with I.J.W.  Further,
testimony was presented that Lawanda smoked marijuana once or twice a month since
the age of 18 and that she admitted to Dr. Clawson that it made her less
attentive as a parent.  Lawanda also has a history of abusing alcohol and, on
one occasion, Nathan Woods allegedly removed I.J.W. from her house due to the fear
that she could not properly care for him because she was intoxicated.  Evidence
was also presented that Lawanda failed to care for the basic needs of the
children such as keeping them clean, changing their diapers, feeding I.J.W.,
and taking the children to scheduled doctor appointments.

      In addition, there was
considerable evidence presented at trial that Lawanda does not possess adequate
parenting skills to care for the children.  Dr. Shinder on two occasions tested
Lawanda’s basic parenting knowledge with an objective exam.  Lawanda was not
able to correctly answer a majority of the questions.  Dr. Shinder testified
that Lawanda “doesn’t have a reasonable recognition of the obligations and
responsibilities of a parent in regard to basic safety for children.”  Dr.
Clawson acknowledged that Lawanda made progress in her drug treatment, set
boundaries with friends and family, tried to establish a support system, and
visited her children.  However, Clawson also expressed concern about Lawanda’s
ability to parent the children and recommended termination of Lawanda’s
parental rights because of her inadequate parenting skills and cognitive
limitations.  We hold that the evidence is sufficient to show that Lawanda engaged
in conduct or knowingly placed S.K.D.C, T.K.B., and I.J.W. with persons who
engaged in conduct that endangered their physical or emotional well-being.  Accordingly,
we overrule Lawanda’s second issue.

Best Interest

      In determining whether
termination is in a child’s best interest, we may consider several factors,
including, but not limited to:  (1) the child’s desires, (2) the current and
future physical and emotional needs of the child, (3) the current and future
physical danger to the child, (4) the parental abilities of the person seeking
custody, (5) whether programs are available to assist the person seeking
custody in promoting the best interests of the child, (6) plans for the child
by the person seeking custody, (7) the stability of the home, (8) acts or
omissions of the parent that may indicate that the parent-child relationship is
not proper, and (9) any excuse for acts or omissions of the parent.  Holley,
544 S.W.2d at 371-72.  The burden is on CPS to rebut the presumption that
the best interest of the child is served by keeping custody in the natural
parents.  In re K.C.M., 171 S.W.3d 472, 480 (Tex. App.—Houston [14th
Dist.] 2005, no pet.).

      Desires of the Children  

      The record does not reflect the
desires of the children.  S.K.D.C., T.K.B., and I.J.W. were ages four years,
three years, and twenty months respectively at the time of trial.  

      Current and Future Physical
and Emotional Needs

      Tess Kuckleburge, a CPS caseworker,
testified that Lawanda was unable to discipline the children and provide
structure during her visits with the children at the CPS office.  Lawanda did
not seem to notice when the children left the room unattended and, on one
occasion, treated S.K.D.C. harshly for spilling a drink.  This evidence
suggests that it is difficult for Lawanda to provide for the emotional needs of
the children.

      It is also doubtful that Lawanda
can provide for the physical needs of the children.  Lawanda has never been employed
and has a ninth-grade education.  Lawanda currently lives on Social Security
benefits and other public assistance.  Although in working toward getting her
children back, Lawanda agreed to take the GED and find employment, she failed
to meet these goals within the 18 months between the removal of the children
and the trial.  Further, Lawanda is not able to properly manage her money and
provide the children with necessities.

      Current and Future Physical
Danger to Children

      Lawanda contends that she did not
engage in conduct that endangered the children.  However, Lawanda admitted to
smoking marijuana, smoking tobacco, and abusing alcohol during pregnancy.  She
admitted smoking marijuana once or twice a month while in possession of her
children.  Evidence of prenatal and postnatal drug abuse by a parent may be a
ground for termination.  In the Interest of R.D., 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied).

Lawanda also contends that
she can provide a safe environment for her children and that she has a group of
friends to help her with the children.  However, as Lawanda testified, it was a
friend who smoked marijuana in the same room as her children and, as previously
noted, the friends upon whom Lawanda primarily relies for support also admit to
regularly smoking marijuana.  Lawanda also relies upon friends for
transportation; however, several drive without a driver’s license.  Lawanda
also drives without a license and has failed to obtain a license although
encouraged to do so.

As previously discussed,
Lawanda has a history of abusive relationships with men.  Lawanda and Nathan
argued in I.J.W.’s hospital room and Lawanda contends that Nathan trashed her
house so that CPS would take her children from her.  Lawanda consistently has
chosen to associate with men who do not provide a stable environment for her
children.

      Parental Abilities  

      The record reflects that Lawanda does
not have the necessary parental abilities to care for her children.  Her
therapist recommended termination of Lawanda’s parental rights because, in her
opinion, Lawanda lacks the basic knowledge necessary for parenting.  Lawanda
could not answer the majority of Dr. Shinder’s questions designed to test her
ability to care for her children.  For example, Lawanda answered that a
two-year-old was old enough to get an allowance while a fourteen-year-old
needed assistance cutting meat at the dinner table.  CPS officials also testified
that she was not able to maintain structure and discipline in her supervised
visits with her children.  Further, Lawanda failed to properly feed I.J.W.  The
baby only gained three ounces in his first month and required hospitalization
for failing to thrive.  

      Programs Available to Assist
Person Seeking Custody

      Lawanda attended parenting
classes and counseling in which she learned some necessary parenting skills. 
However, Lawanda’s therapist and CPS did not feel that she obtained the
necessary skills to safely care for her children.




      Plans for Child by Person
Seeking Custody

      Lawanda claimed that she planned
to obtain her GED and employment in order to better care for her children yet
she failed to do so before trial.  She also planned to care for the children
with the help of her friends.

      Stability of Home

      Lawanda moved to better housing
before trial.  Her new apartment is clean and would provide a safer environment
for the children; however, Lawanda’s new home is a one-bedroom apartment which
would not accommodate her and the children.  Lawanda planned to move to a
larger apartment if the children were returned to her.

      Parent’s Acts or Omissions,
and Excuses for such Acts or Omissions 

      The evidence relevant to these factors
is discussed above.  

      Application of Best Interest
Factors

      In viewing this evidence, we hold
that the trial court could have formed a firm belief or conviction that
termination of Lawanda’s parental rights was in the best interest of the
children, particularly because the evidence shows that Lawanda endangered the
physical and emotional well-being of the children by engaging in a course of conduct
involving drug and alcohol use, failing to adequately provide for necessities
for the children, and exposing the children to abusive relationships.  Further,
we find that termination is in the best interest of the children because the
evidence shows that Lawanda does not possess the necessary abilities to care
for the children.  We hold that the evidence was legally sufficient and,
despite Lawanda’s evidence that she attended counseling, attended parenting
classes, and completed a drug-treatment program, was factually sufficient to
uphold the court’s finding that termination of Lawanda’s parental rights was in
the best interest of S.K.D.C., T.K.B., and I.J.W.  We overrule Lawanda’s third
issue.

Conclusion

      We affirm the trial court’s order of
termination. 

                                                                                                                                                        

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in this
judgment without a separate opinion)

Affirmed

Opinion
delivered and filed March 29, 2006

[CV06]