

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00033-CV

## IN THE INTEREST OF
## D.L.S., L.J.S., AND C.S.S., CHILDREN,

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2007-4731-1,2

## MEMORANDUM OPINION

Appellant Christina "Doe," the mother of D.L.S., L.J.S., and C.S.S., appeals the termination of her parental rights, asserting twenty-six issues. We will affirm.

**Background**

In May 2007, when C.S.S. was nine months old, he was under the care of his father Chris and nearly drowned in the bathtub as a result of Chris's neglect. Christina was at work at the time. Following this incident, Family Based Safety Services became involved with the family and all three children were placed with Kimberly, who is Chris's mother and the paternal grandmother of L.J.S. and C.S.S.

In April 2008, the Department of Family and Protective Services filed suit seeking permanent conservatorship with either a relative or the Department and alternatively

seeking termination of the parental rights of Christina and Chris and of Don, the father of D.L.S. Chris voluntarily relinquished his parental rights to L.J.S. and C.S.S. Post-trial, Don voluntarily relinquished his parental rights to D.L.S.

In September 2009, the trial court approved a mediated settlement agreement and signed an order in which the Department and Kimberly were appointed as the nonparent joint managing conservators of the children. That agreement gave Christina certain visitation rights and imposed certain requirements on her. In January 2010, Kimberly filed a petition to modify that sought to prevent Christina's visitation, and a few months later filed a motion pertaining to Christina's alleged violations of the agreement.

In April 2010, the Department filed an amended petition that sought termination of Christina's parental rights. In a jury trial held in November 2010, the jury made findings against Christina under Family Code subsections 161.001(1)(D) (knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being); 161.001(1)(E) (engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being); 161.001(1)(F) (failed to support the children in accordance with her ability during a period of one year ending within six months of the date of the petition's filing); and 161.001(1)(P) (used a controlled substance in a manner that endangered the health or safety and failed to complete a court-ordered substance abuse treatment program or, after completion of such program, continued to abuse a controlled substance). The jury also found that termination is in

the children's best interest. The trial court entered a termination order based on those findings.

## Sufficiency of the Evidence

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2006); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766. If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re S.N.,* 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.); *In re T.N.F.,* 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied).

Christina asserts that the evidence is legally and factually insufficient to support the jury's findings as to each child under subsections 161.001(1)(E) (issues 1-2, 9-10, and 17-18), 161.001(1)(F) (issues 3-4, 11-12, and 19-20), and 161.001(1)(P) (issues 5-6, 13-14, and 21-22) and to support the best-interest findings as to each child (issues 7-8, 15-16, and 23-24). Notably, she does not challenge the sufficiency of the evidence to support the jury's findings as to each child under subsection 161.001(1)(D), candidly stating in

her brief: "The record in this case reflects evidence of the children's living conditions as an environment that was a source of endangerment to the children's physical or emotional well-being." In response, the Department asserts that because Christina has not challenged all four predicate grounds for termination, the unchallenged findings under subsection 161.001(1)(D) are binding and support the judgment. *See In re V.M.O.*, No. 07-09-00187-CV, 2009 WL 4893636, at *2 (Tex. App.—Amarillo Dec. 18, 2009, no pet.) (mem. op.); *see also In re M.F.*, No. 13-10-00248-CV, 2010 WL 4901407, at *3 (Tex. App.—Corpus Christi Dec. 2, 2010, no pet.) (mem. op.); *S.N.*, 272 S.W.3d at 49. The Department is correct, and the jury's unchallenged findings under subsection 161.001(1)(D) support the termination order. Accordingly, we need not address issues 1-6, 9-14, and 17-22 and will proceed to review the sufficiency of the evidence on the best-interest findings.

In issues 7-8, 15-16, and 23-24, Christina asserts that the evidence is legally and factually insufficient to support the jury's findings that termination is in the best interest of each child.[1] In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5)

---

[1] The standards of review for legal and factual sufficiency in termination cases are well-established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). Due process requires the petitioner to justify termination of parental rights by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87.

*Desires of the child:* The jury heard testimony that the children do not want to go with Christina, and D.L.S., the oldest child, expressed feelings of hostility toward her and said that he wanted to be adopted by Kimberly. *See Adams v. Tex. Dep't Fam. & Prot. Serv's.*, 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.). After C.S.S.'s near-drowning incident in May 2007, the children had limited contact with Christina. At the time of trial, the children had not seen Christina in a year. They have a strong bond with Kimberly, whom they had lived with since May 2007. The evidence on this factor weighs in favor of the jury's best-interest findings.

*The child's emotional and physical needs now and in the future and the emotional and physical danger to the child:* Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431-35 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007

WL 293023, at *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage). Often, the best interest of the child is infused with the statutory offensive behavior. *In re W.E.C.,* 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.). Parental knowledge of the occurrence of an actual offense that endangers a child's emotional or physical well-being is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded the risk. *In re R.G.,* 61 S.W.3d 661, 667-68 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002).

The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.,* 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc). The goal of establishing a stable permanent home for a child is a compelling state interest. *Dupree,* 907 S.W.2d at 87.

The parties point to the following evidence on these two factors:

- While Christina said that she was unaware that Chris was under the influence of drugs when C.S.S. nearly drowned, the jury could have disbelieved her because she knew of his propensity to use drugs while he was caring for the children.

- Since 2005, Christina had moved eight times and had at least five roommates and six jobs. She had been threatened with termination in her current job, and she had been terminated from her most recent job.

- Christina admitted to an extensive history of drug use, including drug use and smoking during her pregnancies. She said that she used methamphetamine during a pregnancy but that she did not know she was pregnant when she used. L.J.S. was born premature, and her twin died soon after being born. L.J.S. suffered from seizures, and Christina was told that Chris was taking L.J.S.'s anti-seizure medication. There was testimony that D.L.S.'s urine was kept in the refrigerator to use for drug testing. Christina and Chris had drugs and drug

paraphernalia in the home and smoked marijuana around the children, and there was testimony that the children appeared to have a "contact high" from second-hand marijuana smoke. After the children were placed with Kimberly, Christina's drug use continued; she admitted to cocaine use, tested positive for an unprescribed tranquilizer (Xanax), and tested positive for cocaine and had a diluted urine sample. Christina associated with persons with criminal records after agreeing not to do so.

- There was evidence of domestic violence between Christina and Chris, including a fight where a door was slammed into D.L.S.'s head by Chris.

- Christina did not meet her child-support obligations while the children lived with Kimberly, despite receiving L.J.S.'s disability checks for some time and receiving Don's child-support checks meant for D.L.S.

- The children had significant developmental problems while in Christina's care, and she frequently missed speech therapy appointments for L.J.S. and C.S.S. There was testimony that D.L.S. experienced emotional problems after having had contact with Christina. A psychologist testified that Christina had shown improvement in therapy over time.

The evidence on these factors weighs in favor of the best-interest findings.

*Parental abilities and available programs:* Evidence of a parent's drug addiction and home and job instability can show a lack of parental abilities. *Doe v. Brazoria Cty. Child Prot. Serv's.,* 226 S.W.3d 563, 574 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In addition to the above evidence, there was testimony that Christina did not bathe the children regularly or change the infant's diapers and that on one occasion, D.L.S., when he was three, was found outside on a cold night, barefoot and dressed only in underwear. Further, Christina was diagnosed with an anti-social personality disorder, and such a disorder leads a person to tend to put herself before her children. There was ample evidence that the children were thriving under Kimberly's care. The evidence on this factor weighs heavily in favor of the jury's best-interest findings.

*Plans for child and stability of the home:* The Department's plan was for the children to remain with Kimberly and for her to adopt them. The children have a routine in her home and always have someone at home. Kimberly has continued with the children's therapies, and they are all involved in extracurricular activities. Kimberly wants to adopt the children, and although she is not D.L.S.'s biological grandmother, Don (D.L.S.'s father, who later relinquished his parental rights) said that it was best for Kimberly to adopt D.L.S. Several professionals and Department personnel testified that it was in the best interest of the children to have Christina's parental rights terminated and for them to stay with Kimberly. Others said that it would not be in their best interest to be "in limbo" or where there was instability. D.L.S.'s therapist thought that, based on how things were when she last saw him, Christina should not be brought back into his life.

Christina's plan was for the children to remain in Kimberly's care and for Kimberly and the Department to continue as joint managing conservators while Christina attempted to gain stability in her own life by going to technical school and buying a home. There was testimony from a psychologist that Christina had shown improvement in therapy over time. However, in considering the best interest of a child, evidence of a parent's recent turnaround does not totally offset evidence of a pattern of instability and harmful behavior. *Smith v. Tex. Dep't Prot. & Reg. Serv's.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

The evidence on these factors weighs in favor of the best-interest findings.

*Acts or omissions and any excuses for them:* The Department points to Christina's drug use, neglectful supervision, overall instability, and relationships with others who use drugs and break the law. Christina asserted that several of her job changes were to make more money and that she was not aware that some of her friends had criminal records. She said one of the reasons she did not pay child support was because it was not withdrawn from her paycheck, as she thought would happen automatically.

The evidence on these factors weighs in favor of the best-interest findings.

In conclusion, on the jury's findings that termination of Christina's parent-child relationships with her three children would be in their best interests, considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's findings, we hold that a reasonable trier of fact could have formed a firm belief or conviction that termination was in the children's best interests. *J.F.C.*, 96 S.W.3d at 266. We overrule Christina's no-evidence complaints in issues 7, 15, and 23. And viewing all the evidence in a neutral light in relation to the *Holley* factors, we hold that the jury could have reasonably formed a firm belief or conviction that termination of Christina's parent-child relationships with her three children was in their best interests. Accordingly, the evidence is factually sufficient on the best-interest findings, and we overrule issues 8, 16, and 24.

**Evidentiary Issues**

In issue 25, Christina complains that the trial court erroneously admitted the CASA guardian ad litem's written report over her hearsay objection. In issue 26, she complains that the trial court erroneously admitted a psychologist's three reports on the

children. We assume without deciding that the trial court erred in admitting these reports and will proceed to a harm analysis and determine if the error warrants reversal or was harmless.

To warrant reversal, we must conclude that the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Bay Area Healthcare Group, Ltd. v. McShane,* 239 S.W.3d 231, 234 (Tex. 2007). "We review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *McShane,* 239 S.W.3d at 234. To obtain reversal, no other similar evidence must have been admitted. *Reliance Steel & Aluminum Co. v. Sevcik,* 267 S.W.3d 867, 873-74 (Tex. 2008). If wrongly admitted evidence is merely cumulative of other evidence that was properly admitted, the error is harmless. *See In re C.R.,* 263 S.W.3d 368, 370-71 (Tex. App.—Dallas 2008, no pet.); *see also In re D.P.,* No. 10-09-00271-CV, 2010 WL 654525, at *2 (Tex. App.—Waco Feb. 24, 2010, no pet.) (mem. op.).

Susan Burt, the guardian ad litem and author of the report, testified at trial. Christina identifies three specific hearsay statements within Burt's report. For each of these three statements, nearly identical evidence was admitted without objection through testimony. Furthermore, the rest of the evidence in this case was "so one-sided" that any error in the report's admission "likely made no difference." *Sevcik,* 267 S.W.3d at 873 (citing *Tex. Dep't Human Serv's. v. White,* 817 S.W.2d 62, 63 (Tex. 1991)). Accordingly, any error in the admission of all or part of Burt's report is harmless and did not probably cause the rendition of an improper judgment. Issue 25 is overruled.

Dr. Lee Carter, the psychologist who evaluated all three children and wrote a report on each, testified at trial. Christina emphasizes that the report on D.L.S. contains seven negative statements made by D.L.S. about Christina to Dr. Carter, who repeated five of them without objection while testifying. Others testified without objection to similar statements by D.L.S. Accordingly, any error in the admission of all or part of Dr. Carter's three reports is harmless and did not probably cause the rendition of an improper judgment. Issue 26 is overruled for the same reasons as issue 25.

We affirm the trial court's order of termination.


                                                        REX D. DAVIS
                                                        Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed June 22, 2011
[CV06]