IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-11-00033-CV

 

In
the Interest of

D.L.S.,
L.J.S., and C.S.S., Children,

                                                                                    

 

 



From the 74th District
Court

McLennan County, Texas

Trial Court No. 2007-4731-1,2

 



MEMORANDUM  Opinion



 

            Appellant Christina “Doe,” the mother of
D.L.S., L.J.S., and C.S.S., appeals the termination of her parental rights,
asserting twenty-six issues.  We will affirm.

Background

            In May 2007, when C.S.S. was
nine months old, he was under the care of his father Chris and nearly drowned
in the bathtub as a result of Chris’s neglect.  Christina was at work at the
time.  Following this incident, Family Based Safety Services became involved
with the family and all three children were placed with Kimberly, who is
Chris’s mother and the paternal grandmother of L.J.S. and C.S.S.

            In April 2008, the
Department of Family and Protective Services filed suit seeking permanent
conservatorship with either a relative or the Department and alternatively
seeking termination of the parental rights of Christina and Chris and of Don,
the father of D.L.S.  Chris voluntarily relinquished his parental rights to
L.J.S. and C.S.S.  Post-trial, Don voluntarily relinquished his parental rights
to D.L.S.

            In September 2009, the trial
court approved a mediated settlement agreement and signed an order in which the
Department and Kimberly were appointed as the nonparent joint managing
conservators of the children.  That agreement gave Christina certain visitation
rights and imposed certain requirements on her.  In January 2010, Kimberly filed
a petition to modify that sought to prevent Christina’s visitation, and a few
months later filed a motion pertaining to Christina’s alleged violations of the
agreement.

            In April 2010, the
Department filed an amended petition that sought termination of Christina’s
parental rights.  In a jury trial held in November 2010, the jury made findings
against Christina under Family Code subsections 161.001(1)(D) (knowingly placed
or knowingly allowed the
children to remain in conditions or surroundings that endangered their physical
or emotional well-being); 161.001(1)(E)
(engaged in conduct or
knowingly placed the children with persons who engaged in conduct that
endangered their physical or emotional well-being); 161.001(1)(F) (failed to support the children in
accordance with her ability during a period of one year ending within six
months of the date of the petition’s filing); and 161.001(1)(P) (used a
controlled substance in a manner that endangered the health or safety and
failed to complete a court-ordered substance abuse treatment program or, after
completion of such program, continued to abuse a controlled substance).  The
jury also found that termination is in the children’s best interest.  The trial
court entered a termination order based on those findings.

Sufficiency of the Evidence

            In a proceeding to terminate
the parent-child relationship brought under section 161.001, the Department
must establish by clear and convincing evidence two elements:  (1) one or more
acts or omissions enumerated under subsection (1) of section 161.001, termed a
predicate violation; and (2) that termination is in the best interest of
the child.  Tex. Fam. Code Ann. §
161.001 (Vernon Supp. 2006);
Swate v. Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). 
The factfinder must find that both elements are established by clear and
convincing evidence, and proof of one element does not relieve the petitioner
of the burden of proving the other.  Holley v. Adams, 544 S.W.2d 367,
370 (Tex. 1976); Swate, 72 S.W.3d at 766.  If multiple predicate
violations under section 161.001(1) were found in the trial court, we will
affirm based on any one ground because only one predicate violation under
section 161.001(1) is necessary to a termination judgment.  In re S.N., 272
S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.); In re T.N.F., 205 S.W.3d 625,
629 (Tex. App.—Waco 2006, pet. denied).

            Christina asserts that the
evidence is legally and factually insufficient to support the jury’s findings as
to each child under subsections 161.001(1)(E) (issues 1-2, 9-10, and 17-18),
161.001(1)(F) (issues 3-4, 11-12, and 19-20), and 161.001(1)(P) (issues 5-6,
13-14, and 21-22) and to support the best-interest findings as to each child
(issues 7-8, 15-16, and 23-24).  Notably, she does not challenge the
sufficiency of the evidence to support the jury’s findings as to each child
under subsection 161.001(1)(D), candidly stating in her brief:  “The record in
this case reflects evidence of the children’s living conditions as an
environment that was a source of endangerment to the children’s physical or
emotional well-being.”  In response, the Department asserts that because
Christina has not challenged all four predicate grounds for termination, the
unchallenged findings under subsection 161.001(1)(D) are binding and support
the judgment.  See In re V.M.O., No. 07-09-00187-CV, 2009 WL 4893636, at
*2 (Tex. App.—Amarillo Dec. 18, 2009, no pet.) (mem. op.); see also In re
M.F., No. 13-10-00248-CV, 2010 WL 4901407, at *3 (Tex. App.—Corpus Christi
Dec. 2, 2010, no pet.) (mem. op.); S.N., 272 S.W.3d at 49.  The
Department is correct, and the jury’s unchallenged findings under subsection
161.001(1)(D) support the termination order.  Accordingly, we need not address
issues 1-6, 9-14, and 17-22 and will proceed to review the sufficiency of the
evidence on the best-interest findings.

            In issues 7-8, 15-16, and
23-24, Christina asserts that the evidence is legally and factually
insufficient to support the jury’s findings that termination is in the best
interest of each child.[1] 
In determining the best interest of a child, a number of factors have been
considered, including (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities
of the individuals seeking custody; (5) the programs available to assist these
individuals; (6) the plans for the child by these individuals; (7) the
stability of the home; (8) the acts or omissions of the parent that may
indicate the existing parent-child relationship is not a proper one; and (9)
any excuse for the acts or omissions of the parent.  Holley, 544 S.W.2d at
371-72. This list is not exhaustive, but simply indicates factors that have
been or could be pertinent.  Id.

            The Holley factors
focus on the best interest of the child, not the best interest of the parent.  Dupree
v. Tex. Dep’t Prot. & Reg. Serv’s., 907 S.W.2d 81, 86 (Tex. App.—Dallas
1995, no writ).  The goal of establishing a stable permanent home for a child
is a compelling state interest.  Id. at 87.

            Desires of the child: 
The jury heard testimony that the children do not want to go with Christina,
and D.L.S., the oldest child, expressed feelings of hostility toward her and
said that he wanted to be adopted by Kimberly.  See Adams v. Tex. Dep’t Fam.
& Prot. Serv’s., 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.]
2007, no pet.).  After C.S.S.’s near-drowning incident in May 2007, the
children had limited contact with Christina.  At the time of trial, the
children had not seen Christina in a year.  They have a strong bond with
Kimberly, whom they had lived with since May 2007.  The evidence on this factor
weighs in favor of the jury’s best-interest findings.

            The child’s emotional and
physical needs now and in the future and the emotional and physical danger to
the child:  Evidence of past misconduct or neglect can be used to measure a
parent’s future conduct.  See Williams v. Williams, 150 S.W.3d 436, 451
(Tex. App.—Austin 2004, pet. denied); Ray v. Burns, 832 S.W.2d 431-35
(Tex. App.—Waco 1992, no writ) (“Past is often prologue.”); see also In re
V.A., No. 13-06-00237-CV, 2007 WL 293023, at *5-6 (Tex. App.—Corpus Christi
2007, no pet.) (mem. op.) (considering parent’s past history of unstable
housing, unstable employment, unstable relationships, and drug usage).  Often,
the best interest of the child is infused with the statutory offensive
behavior.  In re W.E.C., 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003,
no pet.).  Parental knowledge of the occurrence of an actual offense that
endangers a child’s emotional or physical well-being is not necessary; it is
sufficient that the parent was aware of the potential for danger and
disregarded the risk.  In re R.G., 61 S.W.3d 661, 667-68 (Tex. App.—Waco
2001, no pet.), disapproved of on other grounds by In re J.F.C., 96
S.W.3d 256 (Tex. 2002).

            The need for permanence is a
paramount consideration for a child’s present and future physical and emotional
needs.  In re S.H.A., 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ
ref’d n.r.e.) (en banc).  The goal of establishing a stable permanent home for
a child is a compelling state interest.  Dupree, 907 S.W.2d at 87.

            The parties point to the
following evidence on these two factors:


 While
 Christina said that she was unaware that Chris was under the influence of
 drugs when C.S.S. nearly drowned, the jury could have disbelieved her
 because she knew of his propensity to use drugs while he was caring for
 the children.


 


 Since
 2005, Christina had moved eight times and had at least five roommates and
 six jobs.  She had been threatened with termination in her current job,
 and she had been terminated from her most recent job.


 


 Christina
 admitted to an extensive history of drug use, including drug use and
 smoking during her pregnancies.  She said that she used methamphetamine
 during a pregnancy but that she did not know she was pregnant when she
 used.  L.J.S. was born premature, and her twin died soon after being
 born.  L.J.S. suffered from seizures, and Christina was told that Chris
 was taking L.J.S.’s anti-seizure medication.  There was testimony that
 D.L.S.’s urine was kept in the refrigerator to use for drug testing. 
 Christina and Chris had drugs and drug paraphernalia in the home and
 smoked marijuana around the children, and there was testimony that the
 children appeared to have a “contact high” from second-hand marijuana
 smoke.  After the children were placed with Kimberly, Christina’s drug use
 continued; she admitted to cocaine use, tested positive for an
 unprescribed tranquilizer (Xanax), and tested positive for cocaine and had
 a diluted urine sample.  Christina associated with persons with criminal
 records after agreeing not to do so.


 


 There
 was evidence of domestic violence between Christina and Chris, including a
 fight where a door was slammed into D.L.S.’s head by Chris.


 


 Christina
 did not meet her child-support obligations while the children lived with
 Kimberly, despite receiving L.J.S.’s disability checks for some time and
 receiving Don’s child-support checks meant for D.L.S.


 


 The
 children had significant developmental problems while in Christina’s care,
 and she frequently missed speech therapy appointments for L.J.S. and
 C.S.S.  There was testimony that D.L.S. experienced emotional problems
 after having had contact with Christina.  A psychologist testified that
 Christina had shown improvement in therapy over time.  


 

            The evidence on these
factors weighs in favor of the best-interest findings.

            Parental abilities and
available programs:  Evidence of a parent’s drug addiction and home and job
instability can show a lack of parental abilities.  Doe v. Brazoria Cty.
Child Prot. Serv’s., 226 S.W.3d 563, 574 (Tex. App.—Houston [1st Dist.]
2007, no pet.).  In addition to the above evidence, there was testimony that
Christina did not bathe the children regularly or change the infant’s diapers
and that on one occasion, D.L.S., when he was three, was found outside on a
cold night, barefoot and dressed only in underwear.  Further, Christina was
diagnosed with an anti-social personality disorder, and such a disorder leads a
person to tend to put herself before her children.  There was ample evidence
that the children were thriving under Kimberly’s care.  The evidence on this
factor weighs heavily in favor of the jury’s best-interest findings.

            Plans for child and stability
of the home:  The Department’s plan was for the children to remain with
Kimberly and for her to adopt them.  The children have a routine in her home
and always have someone at home.  Kimberly has continued with the children’s
therapies, and they are all involved in extracurricular activities.  Kimberly
wants to adopt the children, and although she is not D.L.S.’s biological
grandmother, Don (D.L.S.’s father, who later relinquished his parental rights) said
that it was best for Kimberly to adopt D.L.S.  Several professionals and
Department personnel testified that it was in the best interest of the children
to have Christina’s parental rights terminated and for them to stay with
Kimberly.  Others said that it would not be in their best interest to be “in
limbo” or where there was instability.  D.L.S.’s therapist thought that, based
on how things were when she last saw him, Christina should not be brought back
into his life.

            Christina’s plan was for the
children to remain in Kimberly’s care and for Kimberly and the Department to
continue as joint managing conservators while Christina attempted to gain
stability in her own life by going to technical school and buying a home.  There
was testimony from a psychologist that Christina had shown improvement in
therapy over time.  However, in considering the best interest of a child,
evidence of a parent’s recent turnaround does not totally offset evidence of a
pattern of instability and harmful behavior.  Smith v. Tex. Dep’t Prot.
& Reg. Serv’s., 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

            The evidence on these
factors weighs in favor of the best-interest findings.




            Acts or omissions and any
excuses for them:  The Department points to Christina’s drug use, neglectful
supervision, overall instability, and relationships with others who use drugs
and break the law.  Christina asserted that several of her job changes were to
make more money and that she was not aware that some of her friends had
criminal records.  She said one of the reasons she did not pay child support
was because it was not withdrawn from her paycheck, as she thought would happen
automatically.

            The evidence on these
factors weighs in favor of the best-interest findings.

            In conclusion, on the jury’s
findings that termination of Christina’s parent-child relationships with her three
children would be in their best interests, considering all the evidence in
relation to the Holley factors in the light most favorable to the trial
court’s findings, we hold that a reasonable trier of fact could have formed a
firm belief or conviction that termination was in the children’s best
interests.  J.F.C., 96 S.W.3d at 266.  We overrule Christina’s no-evidence
complaints in issues 7, 15, and 23.  And viewing all the evidence in a neutral
light in relation to the Holley factors, we hold that the jury could
have reasonably formed a firm belief or conviction that termination of Christina’s
parent-child relationships with her three children was in their best
interests.  Accordingly, the evidence is factually sufficient on the
best-interest findings, and we overrule issues 8, 16, and 24.

Evidentiary Issues

 

            In issue 25, Christina
complains that the trial court erroneously admitted the CASA guardian ad
litem’s written report over her hearsay objection.  In issue 26, she complains
that the trial court erroneously admitted a psychologist’s three reports on the
children.  We assume without deciding that the trial court erred in admitting
these reports and will proceed to a harm analysis and determine if the error
warrants reversal or was harmless.

To warrant reversal, we must
conclude that the error probably caused the rendition of an improper judgment. 
See Tex. R. App. P. 44.1(a)(1);
Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007). 
“We review the entire record and require the complaining party to demonstrate
that the judgment turns on the particular evidence admitted.”  McShane,
239 S.W.3d at 234.  To obtain reversal, no other similar evidence must have
been admitted.  Reliance Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867,
873-74 (Tex. 2008).  If wrongly admitted evidence is merely cumulative of other
evidence that was properly admitted, the error is harmless.  See In re C.R.,
263 S.W.3d 368, 370-71 (Tex. App.—Dallas 2008, no pet.); see also In re
D.P., No. 10-09-00271-CV, 2010 WL 654525, at *2 (Tex. App.—Waco Feb. 24,
2010, no pet.) (mem. op.).

Susan Burt, the guardian ad
litem and author of the report, testified at trial.  Christina identifies three
specific hearsay statements within Burt’s report.  For each of these three
statements, nearly identical evidence was admitted without objection through
testimony.  Furthermore, the rest of the evidence in this case was “so one-sided”
that any error in the report’s admission “likely made no difference.”  Sevcik,
267 S.W.3d at 873 (citing Tex. Dep’t Human Serv’s. v. White, 817 S.W.2d
62, 63 (Tex. 1991)).  Accordingly, any error in the admission of all or part of
Burt’s report is harmless and did not probably cause the rendition of an
improper judgment.  Issue 25 is overruled.

Dr. Lee Carter, the
psychologist who evaluated all three children and wrote a report on each,
testified at trial.  Christina emphasizes that the report on D.L.S. contains
seven negative statements made by D.L.S. about Christina to Dr. Carter, who
repeated five of them without objection while testifying.  Others testified
without objection to similar statements by D.L.S.  Accordingly, any error in
the admission of all or part of Dr. Carter’s three reports is harmless and did
not probably cause the rendition of an improper judgment.  Issue 26 is
overruled for the same reasons as issue 25.

We affirm the trial court’s order of
termination.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion
delivered and filed June 22, 2011

[CV06]









[1] The standards of review for legal and
factual sufficiency in termination cases are well-established.  In re
J.F.C., 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency).  Due process
requires the petitioner to justify termination of parental rights by “clear and
convincing evidence.”  Spangler v. Texas Dept. of Prot. & Reg. Servs.,
962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.).  This standard is defined
as “that measure or degree of proof which will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.”  Id.